Jesús María Maisonave, demandante y apelado, v. Manuel V. Domenech y L. A. MacLeod, Tesorero y Auditor de Puerto Rico, respectivamente, demandados y apelantes.

No. 6308.—*Sometido:* Junio 1, 1933. *Resuelto:* Junio 14, 1933.

*Hon. Procurador General Charles E. Winter* y *E. Aldrey,* Subprocurador, abogados de los apelantes; *F. Colón Gordiani* y *J. E. Segarra,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Jesús María Maisonave solicitó de la Corte de Distrito de San Juan la expedición de un auto perentorio de *mandamus* contra los demandados Manuel V. Domenech y L. A. Mac-Leod, Tesorero y Auditor de Puerto Rico, respectivamente, para que entregaran al demandante la cantidad de $240.33 por concepto de sueldos no pagados al peticionario y la cantidad de $223.43, suma retenida al demandante en virtud de la Ley de Retiro No. 104, de 1925 (pág. 949).

El peticionario desempeñó el cargo de colector de rentas internas por un período aproximado de siete años y fué separado de dicho cargo en 11 de noviembre de 1930 por los siguientes hechos que ambas partes aceptaron mediante estipulación:

"Porque el demandante usó para fines particulares varias cantidades pertenecientes a varios contribuyentes para abonar a recibos adeudados por contribuciones sobre la propiedad, ascendiendo dichas cantidades usadas por el demandante a más o menos la suma de $1,689.52. (El demandante admite que ésta es la suma porque no tiene medios de determinarla y se hace esta admisión para fines de este asunto civil exclusivamente.) El demandante como Colector de Rentas Internas no entregó a ninguno de sus contribuyentes sus recibos correspondientes y fueron cantidades de la propiedad de los contribuyentes. En virtud de estos hechos se le presentó al demandante una acusación en la Corte de Distrito de Humacao, P. R., o sea el Pueblo de Puerto Rico contra Jesús María Maisonave, Crim. No. 9690, contra el Erario de Puerto Rico, por haberse apropiado la suma de $203.33. El demandante alegó culpabilidad y fué condenado a un año de presidio que el demandante cumplió. Todas las demás acusaciones fueron archivadas en la Corte de Distrito de Humacao, P. R."

Los demandados se negaron a entregar las cantidades reclamadas, basándose en el artículo 124 del Código Político, que la corte inferior consideró inaplicable por entender que de los hechos aceptados por las partes aparecía claramente que las sumas malversadas por el demandante no pertenecían al Pueblo de Puerto Rico sino a distintos contribuyentes. Con-

secuente con este criterio la corte *a quo* dictó sentencia ordenando a los demandados el pago de las sumas reclamadas por el demandante en su solicitud. Alegan los apelantes que la corte inferior cometió error al declarar que las sumas apropiadas por el demandante mientras ejercía el cargo de colector de rentas internas de Yabucoa no pertenecían al Pueblo de Puerto Rico, y al dictar sentencia ordenando la expedición de un auto perentorio de *mandamus* contra los demandados.

Como hemos visto, el demandante admite que usó para fines particulares varias cantidades pertenecientes a varios contribuyentes para abonar a recibos adeudados por contribuciones sobre la propiedad. Se aduce por el peticionario que las sumas de que se incautó no pertenecían al Pueblo de Puerto Rico sino a los distintos contribuyentes que le confiaron dichas cantidades, y se da gran importancia al hecho de que no se expidieran recibos a los contribuyentes por las cantidades así satisfechas. No hay duda alguna de que el dinero entregado al peticionario por ciertos contribuyentes para el abono de sus contribuciones sobre la propiedad perteneció a dichos contribuyentes, pero a nuestro juicio resulta claro que dejó de pertenecer a ellos desde el momento en que esas cantidades fueron entregadas al peticionario con el específico propósito de que fuesen abonadas a las contribuciones que adeudaban. El recibo constituye la evidencia del pago; pero si el dinero malversado por el peticionario fué entregado realmente para pagar las contribuciones y El Pueblo de Puerto Rico así lo admite, el hecho queda demostrado por una prueba tan robusta y convincente como la del propio recibo. Además, el peticionario, en virtud de estos hechos que fueron objeto de una acusación, se declaró culpable de haberse apropiado la suma de $203.33, por un delito contra el Erario de Puerto Rico. Las demás acusaciones fueron archivadas. El propio peticionario se confiesa culpable de haber defraudado al Pueblo de Puerto Rico una cantidad, en virtud de los hechos que culminaron en su destitución por haberse apropiado

la cantidad de $1,689.52. No comprendemos cómo puede el peticionario alegar ahora que este dinero no perteneció al Pueblo de Puerto Rico, después de haberlo admitido así, mediante una declaración de culpabilidad en una causa criminal.

■ El artículo 124 del Código Político dice así:

"No se pagará dinero a ninguna persona por concepto de salario, o reclamación entablada contra la Tesorería Insular, si el interesado se hallare en descubierto con el Pueblo de Puerto Rico, por deudas atrasadas, y así consta en los libros del Contador, mientras no hubiere aquél arreglado sus cuentas con el Tesorero de Puerto Rico y satisfecho a éste todas las cantidades de las cuales fuere responsable; *Disponiéndose:* que por razones suficientes y siempre que los intereses del Gobierno Insular resultaren con ello beneficiados, podrán hacerse los necesarios pagos de retribución o salario devengado por personas en descubierto con El Pueblo de Puerto Rico, que continúan en el servicio del Gobierno Insular, mediante la recomendación del Contador, aprobada por el Gobernador."

Las cantidades malversadas no fueron entregadas al peticionario por amigos o personas particulares para que las retuviera en su carácter particular. El mismo peticionario admite que esas sumas fueron pagadas por contribuyentes para el pago de sus contribuciones. La palabra contribuyente expresa claramente las relaciones que mediaron entre el peticionario y las personas que se acercaron a él para entregarle las referidas cantidades, y estas relaciones no pueden ser otras que las de colector y contribuyente, porque fué en este carácter que se llevó a efecto el pago por los deudores a su legítimo acreedor, que era el Pueblo de Puerto Rico, y no el peticionario.

De acuerdo con las disposiciones del artículo 124, el Tesorero y el Auditor de Puerto Rico están impedidos de hacer entrega al demandante de las cantidades que reclama, toda vez que dicha disposición legal prohibe específicamente que se pague dinero a persona alguna por concepto de salario o reclamación si el interesado se hallare en descubierto con el Pueblo de Puerto Rico por deudas atrasadas.

■ Además, aun en el caso de que este dinero malver-

sado perteneciese a los contribuyentes y El Pueblo de Puerto Rico retuviese la suma reclamada por el peticionario para abonarla a dichos contribuyentes, dada la naturaleza de este caso no debemos nosotros intervenir por medio del procedimiento extraordinario de *mandamus* para ordenar el pago de la referida suma al peticionario.

En el caso de *Font* v. *State,* 166 Ind. 455, 77 N. E. 854, se solicitó la expedición de un auto de *mandamus* para que se ordenara al Tesorero del condado el pago de cierta suma. El peticionario adeudaba al Tesoro una suma por concepto de contribuciones atrasadas y acudió al recurso extraordinario de *mandamus* para que se ordenara el pago de cierta cantidad que alegaba se le debía. Declarada con lugar la solicitud de *mandamus* por la corte inferior, la Corte Suprema de Indiana revocó, en apelación, la sentencia dictada, por las razones que a continuación se expresan:

"El procedimiento de *mandamus* se originó en un tiempo cuando en teoría era el rey quien presidía en persona la corte de 'King's Bench'. Era éste un auto privilegiado, expedido por la corte en nombre del rey, y el procedimiento no participaba de la naturaleza de una acción entre las partes. El carácter del procedimiento y la naturaleza del auto han sido materialmente cambiados en este país, pero aquí el auto de *mandamus* es todavía extraordinario, y 'while not discretionary, it will be issued only by a court in the exercise of a sound legal discretion.' Es un remedio procesal, y debe ser expedido para reparar un agravio, no para estimularlo; para ordenar el cumplimiento de un deber que debe ser ejecutado, pero no para decretar la ejecución de un acto que ocasione un agravio público, o para cumplir con el texto estricto de la ley, menospreciando su espíritu, o en ayuda de un fraude público. El peticionario debe venir a la corte con manos limpias."

En el caso de *People* v. *Board of Assessors,* 33, N. E. 145, la Corte de Apelaciones de Nueva York se expresó así:

"El auto de *mandamus* no es siempre exigible como un derecho absoluto, y si se ha de conceder o no depende frecuentemente de la discreción de la corte. El auto debe ser expedido para evitar un fracaso de la justicia pero nunca para promover manifiesta injusticia. Es

un remedio procesal, y debe ser expedido para remediar un agravio, no para estimularlo, para decretar el cumplimiento de un deber que debe ser ejecutado, pero no para ordenar la ejecución de un acto que ocasione un agravio público o privado, o para cumplir con el texto estricto de la ley, menospreciando su espíritu, o en ayuda de un fraude palpable. El peticionario debe venir a la corte con las manos limpias, y no invocar este remedio extraordinario, como en este caso, para evadir el pago de su justa porción de una contribución, utilizando y reclamando la ventaja de una confesada equivocación. Aun cuando no tuviera otro remedio debe dejársele para que acuda a sus propios ardides, con el fin de escapar la honesta responsabilidad que descansa sobre él, y la corte puede propiamente negarse a ayudarlo por medio de procedimientos compulsorios.''

En el presente caso, si el dinero malversado pertenece al Pueblo de Puerto Rico, el peticionario no tiene derecho alguno a la suma que reclama y, si como alega, pertenece a los contribuyentes, es claro que no tiene sus manos limpias quien utiliza el cargo que ejerce para ejecutar un fraude apoderándose de la suma de $1,689.52, y luego pide que se le pague como salario una suma adicional que en todo caso debía destinar al pago de las contribuciones de estos contribuyentes así defraudados. Como ya dijimos antes, el acusado no puede negar que este dinero pertenecía al Pueblo de Puerto Rico después de haberse declarado culpable de fraude al Erario en virtud de los mismos hechos.

*Debe revocarse la sentencia apelada y dictarse otra en su lugar declarando sin lugar la petición de mandamus.*

El Juez Asociado Señor Aldrey no intervino.