José NINE, peticionario y apelante, *v.* JORGE A. ORTIZ y L. A. MATTEI RAMOS, ALCALDE DIRECTOR DE OBRAS PÚBLICAS y SECRETARIO AUDITOR DE LAJAS, respectivamente, demandados y apelados.

Núm. 9357.—*Sometido:* Noviembre 3, 1947. *Resuelto:* Diciembre 22, 1947.

942

*Enrique Báez García,* abogado del apelante; *José Rafael Gelpí,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

José Nine radicó ante la Corte de Distrito de Mayagüez con fecha 9 de febrero de 1945 una petición de *mandamus,* en la cual alega en síntesis que con anterioridad al 28 de julio de 1943 el Municipio de Lajas solicitó de la Comisión de Servicio Público autorización para disponer de $1,000 pertenecientes al Fondo Permanente de Reserva del Acueducto, para atender con ellos al pago de la mano de obra en los siguientes trabajos: (*a*) terminación de la instalación de la tubería de 3 pulgadas en la calle Amistad; (*b*) cambio de la tubería en la calle del Hospital, sustituyendo la de 2 pulgadas existente por una de 3 pulgadas; (*c*) extensión de la tubería de 2 pulgadas a la Urbanización Frank por la calle San Blas hasta la salida del Barrio La Haya; y (*d*) extensión de la tubería hasta las urbanizaciones de la carretera de Lajas a Boquerón; que la Comisión de Servicio Público concedió la autorización solicitada; que de conformidad con lo provisto por los artículos 8 y 38 de la Ley Municipal el Alcalde de Lajas hizo anunciar en el diario La Democracia por el término de ley que se admitirían proposiciones para la realización de las obras anteriormente mencionadas y que dichas

proposiciones se recibirían a más tardar el 20 de octubre de 1943, a las 2 de la tarde, en su oficina en la Alcaldía de Lajas, pero que llegada la hora de la subasta nadie compareció a someter proposiciones y por tal motivo la misma fué declarada desierta; que ante esa situación se reunió la Junta de Subastas del Municipio y acordó que las obras se realizaran mediante órdenes separadas y por administración; que se expidieron órdenes al peticionario para que éste suministrara la mano de obra en los trabajos ya mencionados; que antes del peticionario empezar a prestar los servicios ordenádosle por el Alcalde él presentó las cuatro órdenes para ser certificadas por el Auditor Municipal de Lajas y dicho funcionario procedió a aprobar las mismas y a certificar la existencia de fondos en poder del Tesorero Municipal para hacer efectivo el pago de ellas; que entonces el peticionario comenzó las obras ordenadas y mientras realizaba las mismas, en 10 de noviembre de 1943 la Asamblea Municipal de Lajas suspendió de empleo y sueldo al Alcalde-Director de Obras Públicas Municipal, Aurelio Ramírez Ramírez, designando en su lugar interinamente a José Miguel Toro, quien continuó ocupando dicho cargo en concepto de Alcalde sustituto hasta el 8 de enero de 1945; que al terminar la realización de las obras ordenádasle el peticionario presentó sus correspondientes comprobantes de pago al Alcalde sustituto, quien debería aprobarlos como Director de Obras Públicas; que el peticionario terminó y el Municipio recibió las obras ordenadas sin protesta alguna, pero que al presentar sus comprobantes de pago al Alcalde sustituto, éste se negó a: (a) certificar que la cuenta era correcta y que no había sido pagada ni en todo ni en parte, como Director de Obras Públicas, (b) aprobar el pago de la deuda en su carácter de Alcalde, por entender dicho José Miguel Toro que siendo él un Alcalde sustituto no tenía poder para aprobar dichas órdenes, correspondiendo a su juicio tal aprobación al Sr. Ramírez Ramírez, o a él mismo, cuando su *status* de Alcalde fuera resuelto en definitiva, luego de terminar los pleitos que había pendientes;

que el Auditor Municipal de Lajas certificó como correctos los comprobantes de pago y no hizo efectivos éstos por faltar la firma del Director de Obras Públicas y la del Alcalde; y que transcurrió desde noviembre de 1943 hasta el 8 de enero de 1945 en espera de que se resolviera el status del Alcalde de Lajas, siendo en esta última fecha sustituída en su totalidad la administración de dicho pueblo por la actual como resultado de las elecciones de 1944; que el peticionario volvió a presentar sus comprobantes al Alcalde electo, Jorge A. Ortiz, y éste también se ha negado a efectuar el pago, al igual que lo ha hecho el nuevo Auditor Municipal; que no existe razón alguna para que dichos comprobantes no sean aprobados por los mencionados funcionarios, existiendo dinero expresamente consignado en los libros del Municipio de Lajas para el pago de las indicadas obras, cuyo importe asciende a la suma de $981.25; y que el peticionario no tiene a su alcance otro remedio que no sea el presente recurso de mandamus para obligar a los demandados a pagarle el importe de su crédito.

Los querellados contestaron aceptando algunos hechos de la petición, negando otros y aduciendo como defensas especiales: que nunca ha habido orden legal para la ejecución de las obras a que se contrae la petición; que el peticionario estaba imposibilitado de acuerdo con la ley para contratar con el Municipio, por prohibírselo la Ley Municipal y el Código Político; que la petición no aduce hechos; que siendo Lajas un municipio de tercera clase era la Asamblea Municipal y no la Junta de Subastas el cuerpo con autoridad legal para proceder a hacer obras de la naturaleza de las indicadas en la petición por administración, eliminando las subastas o licitaciones; que el mandamus no procede por no aparecer de la petición que los demandados estén carentes de defensa; que no aparece que la alegada deuda haya sido liquidada, o expresamente aceptada por todas las partes envueltas en la controversia; que de procederse al pago se estaría cometiendo un delito público por las autoridades del Municipio

de Lajas y especialmente por los demandados; que las transacciones a que se contrae la petición se llevaron a cabo entre el peticionario y Aurelio Ramírez Ramírez, Alcalde para aquel entonces del Municipio de Lajas, con el único fin de lucrarse personalmente y con el propósito deliberado de defraudar los fondos del Municipio de Lajas habiendo como cuestión de hecho defraudado a dicho Municipio; que el peticionario estaba incapacitado por ley para actuar en representación del Alcalde de Lajas y consecuentemente a nombre del Municipio de Lajas, no pudiendo ser agente de éste y representante suyo en las transacciones a que se contrae este litigio; que hay una omisión de parte demandada toda vez que el Tesorero Municipal no ha sido incluído como demandado; que existe igualmente omisión de partes demandadas, toda vez que el Municipio de Lajas no ha sido incluído como demandado; y que ha habido tardanza (*laches*) en la radicación de este recurso.

Trabada así la contienda, la vista del recurso fué celebrada ante la Corte de Distrito de Mayagüez durante los días 26 de marzo y 16 de mayo de 1945, dictando ésta opinión y sentencia el 26 de junio siguiente, a virtud de las cuales declaró sin lugar la solicitud. En la opinión de la corte inferior, luego de hacerse constar que ha encontrado probada por la preponderancia de la misma, que las transacciones a que se contraen los hechos de la petición se llevaron a cabo entre José Nine y el ex-alcalde de Lajas, Sr. Aurelio Ramírez Ramírez, con el único fin de lucrarse personalmente, y con el propósito deliberado de defraudar como defraudó los fondos del Municipio de Lajas, se exponen los siguientes asertos en apoyo de su anterior conclusión:

1. Que de la declaración del peticionario se nota que él compareció como licitador a la subasta, pero que no hizo oferta alguna a ver si le tocaba algo en la misma, por lo que se ve que el peticionario no fué a licitar de buena fe, ya que aunque acudió a la subasta a hacer oferta le convenía a sus

intereses particulares no hacer ninguna y que le contratasen para realizar los trabajos por administración;

2. Que de la declaración de Julio Ortiz, quien para la fecha de la subasta era Tesorero-Director Escolar de Lajas se desprende que éste no estuvo presente en reunión alguna de la Junta Administrativa o de Subastas del Municipio de Lajas en 20 de octubre de 1943;

3. Que el peticionario por servicios prestados al Municipio de Lajas por delegación del Alcalde Ramírez durante 53 días cobró a dicho Municipio la suma de $635, que es a todas luces una cantidad exorbitante;

4. Que resulta ilegal e inmoral que una persona que ostente una designación que le convierte en agente del Municipio de Lajas, a virtud de la cual cobra por sus servicios $635 en 53 días, celebre mientras dura tal designación un contrato sobre prestación de servicios al propio Municipio;

5. Que resulta sospechoso que inmediatamente después de haberse declarado desierta la subasta se acuerde celebrar las obras por administración y se contrate para realizar las mismas al Sr. Nine, quien por gran casualidad se encontraba allí presente, siendo más sospechoso todavía que en dicho mismo día se le expida orden al peticionario para la ejecución de la primera parte del contrato que estaba dividido en cuatro partes;

6. Que ofrece sospecha el testimonio de Julio Olán, quien para aquel entonces era maestro de obras del Municipio y quien no obstante haber supervisado las mismas manifestó que no sabía dónde fueron realizadas dichas obras;

7. Que igualmente ofrece sospechas la declaración del propio peticionario, cuando al ser repreguntado por los demandados manifestó no recordar la clase de tubería que él pusiera en las calles de Lajas ni la tubería que colocara en cada sitio específico, a pesar de sólo haberla puesto en cuatro sitios del pueblo; y

8. Que resulta asimismo sospechoso que a pesar de la tubería de mayor diámetro que alega el peticionario haber

puesto en cuatro calles de Lajas, al hacerse excavaciones por Juan Alameda, ayudante de plomería y testigo de los demandados, en la calle Amistad del referido Municipio, no apareció que en años recientes se hubiera puesto o cambiado en dicha calle tubería de clase alguna; y finalmente que el peticionario no acudía a la corte con las manos limpias.

So pena de ser prolijos, hemos hecho una extensa relación de las alegaciones de la demanda, de las defensas suscitadas en la contestación, y de los fundamentos de la opinión emitida por el Juez de la corte inferior. Al así proceder hemos querido que de esta opinión se vea con claridad meridiana cuáles son los fundamentos alegados por una y otra parte y los razonamientos que tuvo la Corte de Distrito al fallar en la forma en que lo hizo. Empero, la cuidadosa lectura que de los autos hemos hecho no nos permite estar de acuerdo con la sentencia dictada, ni con los razonamientos de la opinión que sirvió de base a la misma.

Se desprende del récord de este caso que luego de obtenerse de la Comisión de Servicio Público autorización para utilizar la suma de $1,000 en la realización de ciertas obras relacionadas con el acueducto del municipio de Lajas, se anunció en el periódico La Democracia que se recibirían licitaciones en la oficina del Alcalde sobre las cuatro obras que en el anuncio se mencionaban; que llegados el día y la hora de la subasta no compareció licitador alguno; que en ese momento se hallaba presente el peticionario y que en vista de la ausencia de licitadores se acordó por la Junta de Subastas que las obras se efectuasen por administración. De todo esto no hay la menor duda. Tampoco la hay de que las cuatro obras fueron adjudicadas al peticionario y realizadas por éste de acuerdo con las instrucciones recibidas; de que el municipio se benefició con ellas y de que a pesar de haber fondos disponibles para efectuar el pago, hasta ahora no se ha efectuado el mismo.

De acuerdo con el artículo 14 de la Ley núm. 53 de 28 de abril de 1928 (pág. 335), según fué enmendado por

la Ley núm. 39 de 20 de abril de 1936 (pág. 255), Lajas es un municipio de tercera clase. De conformidad con el artículo 28 de la Ley citada, según fué enmendado por la núm. 98 de 15 de mayo de 1931 (pág. 595), los municipios de esa categoría sólo cuentan con cuatro funcionarios administrativos, a saber: (1) Alcalde; (2) Tesorero-Director Escolar; (3) Secretario-Auditor; y (4) Director de Beneficencia, disponiendo además ese artículo que "Para todos los municipios se crea una Junta Administrativa que estará constituída por sus respectivos funcionarios administrativos, . . . ". Entre las facultades concedidas por ese artículo a dicha Junta está la de "(a) celebración y adjudicación de subastas." No hemos hallado en la Ley Municipal o sus enmiendas ningún artículo o precepto que cree específicamente la llamada Junta de Subastas. Todas las indicaciones son que la referida Junta Administrativa ha sido llamada indistintamente como tal y como Junta de Subastas por la Asamblea Legislativa en la mencionada Ley Municipal, calificándosele en esta última forma especialmente cuando la Junta Administrativa interviene con subastas.

En relación con las subastas dispone el artículo 38 de la Ley Municipal que: "La Junta de Subasta tendrá derecho a rechazar cualquiera o todas las proposiciones y en este último caso podrá anunciar nueva subasta, o disponer del asunto del modo más ventajoso para el municipio, sin competencia" y que *"Cuando se hubiere anunciado una subasta y no se presentaren proposiciones, la Junta de Subasta podrá disponer del asunto en la forma más conveniente al municipio."* (Bastardillas nuestras.) El primero de los párrafos citados no es de aplicación al caso de autos, ya que aquí las partes admiten que no se presentaron proposiciones y que no hubo, por ende, necesidad de rechazar todas o ninguna de éstas. El que sí es aplicable es el segundo párrafo antes copiado, puesto que al anunciarse la subasta y no presentarse proposiciones, la Junta podía disponer del asunto en la forma más conveniente al municipio. Fué esto precisamente lo que

la Junta de Subastas hizo: al no haber licitadores de clase alguna procedió, previa convocatoria hecha al efecto por el Alcalde y en el salón de actos de la Alcaldía Municipal, a celebrar una sesión extraordinaria.

■ En el *exhibit* V (*bis*) se hace mención de la Junta Administrativa y no de la Junta de Subastas del Municipio de Lajas, pero como ya hemos aclarado que la Junta Administrativa y la Junta de Subastas son la misma cosa, el aparente cambio de nombre carece de importancia. Continúa diciendo dicho exhibit que pasada lista por el Secretario respondieron presentes el Alcalde y Presidente de la Junta, el Secretario y el Tesorero Municipal. Como la Junta Administrativa se componía en dicho municipio tan sólo de cuatro miembros, es indiscutible que los tres presentes constituían quorum.[1] Dicho exhibit está suscrito por el Secretario y por el Alcalde del Municipio. La firma del Tesorero no aparece, mas no vemos la necesidad de ello.

■ Entre los testigos que declararon por los demandados figuraba Julio Ortiz, Tesorero Municipal para la época en que la Junta Administrativa se reunió y acordó la realización de las obras a que se contrae este litigio. Manifestó que en ningún momento fué citado para la aludida reunión de la Junta Administrativa. Mas, no obstante, de su propio testimonio se desprende que él fué la persona que le formuló cargos al Alcalde de Lajas ante la Asamblea Municipal. Habiendo prueba documental demostrativa de la forma en que se celebró la sesión de la Junta Administrativa y de las personas presentes, no es necesario que determinemos si el testimonio de Ortiz en relación con este último extremo de la citada sesión era admisible o no, ya que de todos modos nos parece más digno de crédito el contenido del documento que el testimonio de Ortiz. La presunción es "que los deberes de un cargo han sido cumplidos con regularidad" (Ley de Evidencia, artículo 102, inciso 15) y nada hay que nos con-

---

[1] Para aquel entonces el Municipio de Lajas no tenía Director de Beneficencia.

vcnza de que esa presunción ha sido controvertida en este caso.

■ Se desprende además del exhibit V (bis) que habiendo quórum el Alcalde dió cuenta de la subasta publicada para la realización de las cuatro obras que se especifican y que no habiéndose presentado licitadores, él propuso, y fué aceptado, que la Junta Administrativa se acogiera a las disposiciones del artículo 38 de la Ley Municipal.(²)   En virtud de la proposición del Alcalde y de las disposiciones del artículo 38, supra, la Junta acordó ordenar se hiciera el trabajo por administración.

Nada de extraño ni de ilegal vemos nosotros en que al publicarse una subasta y no concurrir licitadores, se reúna inmediatamente la Junta Administrativa y en armonía con el artículo citado de la Ley Municipal ésta acuerde realizar por administración las obras objeto de la subasta.   Nada de extraño hallamos tampoco que una persona acuda a una subasta como espectador o licitador, que al no haber otros licitadores se abstenga de hacer oferta alguna y que luego, al acordar la Junta realizar por administración las obras que fueron objeto de la subasta anunciada, se contrate a dicha persona para efectuar las mismas.

■ Una vez que la Junta Administrativa del Municipio acordó la realización de las cuatro obras por administración, el Alcalde en su carácter de Presidente de la misma y de Director de las obras municipales(³) era el llamado a dar efectividad al acuerdo de la Junta, y como ésta no especificó la persona o personas llamadas a realizar las obras por administración, era de presumirse que el Alcalde quedaba facultado para designar esa persona o personas.   Así lo hizo él al adjudicar los cuatro contratos al peticionario.

■ También se desprende de los autos que en momentos anteriores a aquél en que se celebró la subasta, Aurelio Ra-

---

(²)La parte pertinente del artículo 38 de la Ley Municipal a que se refirió el Alcalde y que se copia en el exhibit, ya ha sido citada más arriba.

(³)Véase el final del párrafo 8 de la sección 29 de la Ley Municipal.

mírez Ramírez, en su carácter de Alcalde de Lajas ordenó al aquí peticionario la prestación de ciertos servicios especiales, por los cuales se pagó a éste la suma total mencionada en la opinión de la corte inferior. Estos servicios según los Exhibits A II, A III, A IV, A V, A VI, y A VII consistieron en ciertas gestiones practicadas por el peticionario (1) en Auditoría y Tesorería Insular y ante el ingeniero Rafael Pacheco Guerra; (2) en la casa comercial Roberto Colón Machinery Company, en Auditoría Insular y en otras encomendadas por el Alcalde; (3) en Auditoría Insular y en la ciudad de Ponce; (4) en Ponce, en la terminación de trabajos de la WPA del Municipio de Lajas y en conseguir brea para la terminación de calles; y (5) en Auditoría y Tesorería Insular, en la casa R. Colón y ante Compañías de Seguros. Todos estos servicios fueron ordenados por el Alcalde, por escrito, y por todos ellos el municipio de Lajas pagó al peticionario, habiéndose prestado los mismos entre el 8 de septiembre de 1943 y el 22 de octubre del mismo año. No creemos que la realización de estos servicios específicos y esporádicos convirtieran al peticionario en un empleado del municipio y que en su consecuencia él estuviera impedido de contratar con el mismo. Véase el artículo 10 de la Ley Municipal, según fué enmendado por la ley núm. 253 de 1 de abril de 1946 (pág. 505).([4])

██ Asimismo surge de los autos que en época anterior a la adjudicación de los cuatro contratos objeto de este recurso el peticionario vendió al Municipio de Lajas cemento, madera y otros efectos a precios en exceso de los fijados por la Oficina de Administración de Precios. La ley castiga tal cosa y concede remedios al comprador, mas siendo esas compraventas anteriores a los contratos aquí en disputa, no puede ahora alegarse que con motivo de tales ventas a precios exce-

---

([4]) El artículo 10 en su parte pertinente provee:

"Ningún miembro de la Asamblea Municipal, funcionario ejecutivo, o administrativo, o *empleado del municipio* podrá estar interesado directa o indirectamente, en contratos celebrados con éste." (Bastardillas nuestras.)

sivos el peticionario ha incurrido en fraude en relación con los mencionados cuatro contratos.

Es tan general la regla de que el fraude nunca se presume, de que el que lo alega debe probar su existencia con hechos incontestables, de que no debe entenderse establecida su existencia por simples conclusiones, conjeturas, suposiones o sospechas y de que la prueba demostrativa del fraude debe ser sólida, clara y convincente, que debería ser innecesario citar jurisprudencia en apoyo de ese principio. Bastará con mencionar el caso de *The Texas Co.* v. *Estrada y Alvarez,* 50 D.P.R. 743. En el de autos los demandados imputaron fraude al peticionario, pero la evidencia aducida dista mucho de ser la prueba sólida, clara y convincente requerida por la jurisprudencia.

En cuanto al hecho de no haberse demandado al Municipio de Lajas ni al Tesorero del mismo diremos que éstos no eran partes necesarias. Los comprobantes de pago librados por los municipios son generalmente firmados tan sólo por el Alcalde y por el Auditor Municipal. Los que aparecen en autos como Exhibits V al VIII ya han sido firmados por el Auditor del Municipio de Lajas, faltando únicamente la firma del Alcalde.

Si bien el mandamus es un remedio en ley, al mismo le son aplicables algunos principios de equidad y de ordinario no tendrá derecho al mandamus aquél que no acuda a la corte con manos limpias. *Rodríguez* v. *Corte,* 53 D.P.R. 575; *Maisonave* v. *Domenech, Tesorero,* 45 D.P.R. 247; *Serra, Garabís & Co., Inc.,* v. *Municipio,* 42 D.P.R. 468, 488;(5) y 34 Am. Jur., sección 33, pág. 829. Sin embargo, nada hay en los autos de este caso que nos convenza de que las sospechas a que hace referencia el juez de la corte inferior sean suficientes

---

(5)El caso de *Serra, Garabís & Co., Inc.* v. *Municipio,* supra, fué confirmado en parte y dejado sin efecto en parte por la Corte de Circuito de Apelaciones de los Estados Unidos para el Primer Circuito, 65 F.2d 691. Sin embargo, dicho Tribunal no discute en, su opinión el principio de que el que solicita el auto de mandamus debe acudir a la corte con manos limpias.

para dejar establecido que el peticionario no acudió a la corte con manos limpias.

■ Si bien la defensa de *laches* es aplicable a recursos como el aquí envuelto, la misma no debe prosperar en este caso. El peticionario realizó el trabajo encomendádole y una vez hecho esto acudió ante el alcalde interino del Municipio de Lajas. Éste se negó a ordenar el pago, alegando que eso debería hacerlo el alcalde en propiedad. Hubo entonces numerosos pleitos en relación con el cargo de Alcalde.(⁶) Transcurrió poco más de un año y al tomar posesión el nuevo alcalde electo en las elecciones de 1944, el peticionario insistió en su reclamación, siendo ésta una vez más rechazada. Poco después acudió a la Corte de Distrito de Mayagüez con el recurso que está ante nos. Bajo estas circunstancias, el peticionario no ha sido culpable de *laches*.

■ Las cuatro obras ordenadas fueron realizadas; el Municipio de Lajas se benefició de ellas; hay dinero para pagarlas y nada demuestra que la ley no fuera cumplida o que hubiera habido fraude en la adjudicación o realización del contrato. El hecho de que el Alcalde sustituto o de que la administración posterior al Sr. Ramírez Ramírez ordenara que los tubos puestos por el peticionario fueran desenterrados o sacados del sitio donde se colocaron por el peticionario no debe alterar la situación.

*La sentencia apelada será revocada y en su lugar se dictará otra ordenando a los demandados que efectúen el pago de la suma reclamada por el peticionario.*

---

(⁶) Véase *Asamblea Municipal v. Corte,* 62 D.P.R. 772.