El Juez Asociado Señor Kolthoff Caraballo
emitió la opi-nión del Tribunal.
Nos corresponde resolver si, conforme a la Ley Orgánica del Departamento de Educación de Puerto Rico y en el con-texto de los requisitos de una solicitud de mandamus, el Secretario de Educación tiene el deber ministerial de pro-veer a cada escuela pública un maestro de educación física y otro adicional por cada doscientos cincuenta estudiantes o fracción con que cuente la matrícula de esa escuela.
*260 I
La Ley Núm. 68 de 28 de agosto de 1990, según enmen-dada, conocida como la Ley Orgánica del Departamento de Educación del Estado Libre Asociado de Puerto Rico (Ley Orgánica), hizo compulsoria, por primera vez en la isla, la enseñanza del curso de educación física en todos los grados de nuestro Sistema de Educación Pública (Sistema). Sin embargo, con la aprobación de la Ley Núm. 149 de 15 de julio de 1999,(1) conocida como Ley Orgánica del Departa-mento de Educación de Puerto Rico, se eliminó el requisito de proveer educación física a los estudiantes de las escue-las públicas. Un año después, mediante la Ley Núm. 146 de 10 de agosto de 2000, se enmendó la Ley Núm. 149, supra, para incorporar nuevamente la educación física como materia básica y obligatoria dentro del Sistema.
Con la enmienda de 10 de agosto de 2000, se dispuso que cada escuela proporcionara a sus estudiantes un mí-nimo de tres horas semanales de educación física. Además, se estableció que se garantizaría un maestro de educación física a cada escuela y que en aquellas escuelas con más de doscientos cincuenta estudiantes se nombrarían maestros adicionales por cada doscientos cincuenta estudiantes o fracción.
Pasado tres años desde que se aprobó la anterior en-mienda, la parte peticionaria, Asociación de Maestros (Aso-ciación), entendió que el Departamento de Educación (De-partamento) no había cumplido con lo dispuesto en la Ley mediante la referida enmienda. Por ello presentó ante el Tribunal de Primera Instancia un recurso de mandamus,(2) mediante el cual planteó que era un deber ministerial del Secretario de Educación (Secretario) proveerle a todos los estudiantes del Sistema el mínimo de tres horas semanales de educación física, así como el maestro para esa materia y *261 uno adicional por cada doscientos cincuenta estudiantes o fracción, como expresa taxativamente la ley.
Así las cosas, la Asociación solicitó que como se había incumplido con lo anterior, el Tribunal de Primera Instan-cia le ordenase al Departamento cumplir con el alegado deber ministerial. Por su parte, el Departamento presentó, entre otras cosas, una Solicitud para que se Deniegue el Auto de Mandamus como Cuestión de Derecho, en la que alegó que desde 2001 estaba cumpliendo con la obligación que le imponía la ley de proveer, al menos, un maestro de educación física a cada escuela del Sistema. Además, argu-mentó que crear todas las plazas que se requerían para cumplir a cabalidad el mandato estatutario, en los cuatro años posteriores a la aprobación de la ley, afectaría el cum-plimiento de otras obligaciones del Departamento.
Luego de varios procedimientos, el Tribunal de Primera Instancia dictó una sentencia en la que expidió el recurso de mandamus. (3) En ésta, el foro primario determinó que el Departamento había cumplido con el mínimo requerido por la ley al nombrar, al menos, un maestro de educación física por escuela. Sin embargo, a su vez, concluyó que el Depar-tamento había incumplido con el requisito de proveer los maestros adicionales, de acuerdo con el número de estu-diantes matriculados en las escuelas. Por ello, ordenó que, en cumplimiento con el deber ministerial impuesto por el Art. 3.04 de la Ley Orgánica vigente, el Departamento de-bía presentar un plan de nombramientos que tuviera como objetivo cumplir a cabalidad con el mandato de ley, con-forme a su capacidad.
Inconforme, el Departamento acudió ante el Tribunal de Apelaciones mediante recurso de apelación. Dicho foro ape-lativo intermedio dictó una sentencia mediante la cual re-vocó el dictamen del Tribunal de Primera Instancia.(4) En *262 su sentencia, el Tribunal de Apelaciones concluyó que en este caso no procedía expedir el mandamus por no encon-trarnos ante un deber ministerial que obligara al Secreta-rio a cumplir con lo dispuesto en la Ley Orgánica del De-partamento, según enmendada en el 2000. Indicó que no tenía duda de que el reclamo que hacía la Asociación en el caso estaba dentro de las funciones y los deberes asignados al Secretario, pero que ello no representaba necesaria-mente que éstos fuesen deberes ministeriales.
Así, pues, el Tribunal de Apelaciones consideró que la determinación que hizo el Secretario en cuanto a nombrar los maestros de educación física adicionales por cada dos-cientos cincuenta estudiantes “conlleva [ba] un análisis de juicio, evaluativo [sic] y programático del presupuesto que le toca[ba] administrar. En otras palabras, [que era] una determinación que conlleva [ba] la discreción administra-tiva según la realidad presupuestaria del Departamento” de Educación, pues “[e]l Secretario [de Educación] est[aba] limitado por la sabiduría de su propio juicio y por su noción de cuáles eran las prioridades presupuestarias’’(5) El foro apelativo intermedio finalizó expresando que “[e]l deber de nombrar todas las plazas de educación física conforme lo establecía la ley, es un deber discrecional y su omisión no es remediable mediante el recurso de [mandamus]”.(6)
Inconforme, la Asociación acudió ante este Tribunal me-diante una solicitud de certiorari(7) en la cual señaló úni-camente la comisión del error siguiente:
ERRÓ EL TRIBUNAL DE APELACIONES AL REVOCAR LA SENTENCIA EMITIDA POR EL TRIBUNAL DE PRIMERA INSTANCIA Y DETERMINAR QUE EL MANDATO ESTA-BLECIDO EN LA LEY 149, DE 15 DE JULIO DE 1999 SO-BRE LA OBLIGACIÓN DEL SECRETARIO DEL DEPARTA-MENTO DE EDUCACIÓN DE NOMBRAR LOS MAESTROS *263 DE EDUCACIÓN FÍSICA ES UN DEBER DISCRECIO-NAL. ...
Oportunamente, expedimos el auto solicitado. Con el be-neficio de las comparecencias de las partes, procedemos a resolver el recurso.
II
A. El auto de “mandamus”
El auto de mandamus es un recurso altamente privilegiado y discrecional que se expide para ordenar a cualquier persona natural, corporación o a un tribunal de inferior jerarquía que cumpla o ejecute un acto que forma parte de sus deberes y atribuciones.(8) Este, “aunque es un remedio en ley, participa de la índole de los de equidad”.(9) Por consiguiente, algunos principios rectores de los recursos de equidad, como los que gobiernan el injunction, le aplican al auto de mandamus.i(10)
Este recurso sólo se utiliza para exigir el cumplimiento de un deber impuesto por la ley; es decir, de un deber calificado de “ministerial” y que, como tal, no admite discreción en su ejercicio, sino que es mandatorio e imperativo.(11) El requisito fundamental para expedir el recurso de mandamus reside, pues, en la constancia de un *264 deber claramente definido que debe ser ejecutado.(12) Es decir, “la ley no sólo debe autorizar, sino exigir la acción requerida”. (13)
De esta forma, si la ley prescribe y define el deber que debe cumplirse con tal precisión y certeza que nada deja al ejercicio de la discreción o juicio, el acto es ministerial.(14) No se trata de una mera directriz o de una disposición que requiere hacer algo, sin más. Debe tratarse de un mandato específico que la parte demandada tiene que cumplir y que no le permite decidir si cumple o no el acto solicitado. A contrario sensu, cuando la ejecución del acto o la acción que se describe depende de la discreción o juicio del funcionario, tal deber se considera como no ministerial. (15) Por consiguiente, al no ser ministeriales, los deberes discrecionales quedan fuera del ámbito del recurso de mandamus. (16)
Por otro lado, hemos resuelto que este deber ministerial, aunque inmanente al auto de mandamus, no tiene que ser necesariamente expreso, pues tal supuesto reduciría la función exclusiva de este Tribunal de interpretar la Constitución y las leyes.(17) Si el deber surge o no claramente de las disposiciones aplicables, es una cuestión sujeta a interpretación judicial que no depende de un juicio a priori fundado exclusivamente en la letra del estatuto.(18) Tal determinación tiene que surgir del examen y análisis de todos los elementos útiles a la función interpretativa; del examen paciente y riguroso que parte de la letra de la *265 ley, y de la evaluación de todos los elementos de juicio dis-ponibles para así descubrir el verdadero significado y pro-pósito de la disposición legal.(19) Por tal razón, la determi-nación final dependerá de la interpretación que del estatuto orgánico de la agencia hagan los tribunales, sobre el grado de discreción conferido por la Asamblea Legislativa.
Además, el deber ministerial que exige el recurso de mandamus debe emanar de un empleo, cargo o función pública, por lo que el recurso procede contra todos los funcionarios del ejecutivo, desde el más alto hasta el último en la escala jerárquica.(20) Este recurso puede aplicarse no sólo a funcionarios públicos, sino a cualquier agencia, junta o tribunal inferior de nuestro Sistema Judicial, siempre que éstos estén obligados a ejecutar un acto por mandato de ley.(21)
Por tal razón, aquella persona que se vea afectada por el incumplimiento del deber podrá solicitar el recurso.(22) Sin embargo, en cuestiones de interés público, el reconocimiento de legitimación activa es liberal.(23) Así, reconocimos que “cuando la cuestión involucrada es de interés público y el mandamus tiene por objeto conseguir la ejecución de un deber público, el pueblo es considerado como la parte especialmente interesada y el demandante no necesita probar que tiene interés especial en el resultado del caso. Basta demostrar que es un ciudadano y como *266 tal está interesado en la ejecución y protección del derecho público”(24)
Por otro lado, es norma reiterada en nuestro acervo jurídico que “[c]uando la ley es clara [y] libre de toda ambigüedad, la letra no debe ser menospreciada bajo el pretexto de cumplir su espíritu”(25) Conforme a este principio rector de hermenéutica legal, al interpretar un estatuto, como cuestión de umbral, “debemos ... remitirnos al texto de la ley, pues cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa”. (Enfasis en el original.(26) Además, coexiste como claro principio de interpretación jurídica que al lenguaje de una ley debe dársele el significado que valide el propósito que tuvo el legislador al aprobarla(27)
De otra parte, la interpretación que de los estatutos conciban los tribunales debe mantenerse siempre dentro de las prerrogativas judiciales. En el cumplimiento de esta función, resulta necesario que nuestra interpretación armonice, hasta donde sea posible, todas las disposiciones de ley para lograr una interpretación integrada, lógica y razonable de la intención legislativa(28)
Ahora bien, el auto de mandamus, como lo ex-presa la ley, es “altamente privilegiado”. Esto significa que su expedición no se invoca como cuestión de derecho, sino que descansa en la sana discreción del foro judicial(29) Dicha expedición “[n]o procede cuando hay un remedio ordi-nario dentro del curso de ley, porque el objeto del auto no *267 es reemplazar remedios legales sino suplir la falta de ellos”.(30)
El procedimiento para expedir un auto de mandamus está expuesto en la Regla 55 de Procedimiento Civil(31) y por nuestra jurisprudencia. Además, en términos procesa-les, hemos reconocido que debe existir un requerimiento previo del peticionario hacia el demandado para que éste cumpla con el deber exigido, salvo algunas excepciones.(32) Así, pues, como expresa el profesor David Rivé Rivera:
... deb[e] alegarse en la petición, tanto el requerimiento como la negativa, o la omisión del funcionario en darle curso. Sólo se exime de este requisito: 1) cuando aparece que el requeri-miento hubiese sido inútil e infructuoso, pues hubiese sido denegado si se hubiera hecho; o 2) cuando el deber que se pretende exigir es uno de carácter público, a diferencia de uno de naturaleza particular, que afecta solamente el derecho del peticionario. (Escolios omitidos y énfasis suplido.)(33)
Como puede observarse, cuando se utiliza el remedio de mandamus para obligar el cumplimiento de una función que redunda en el beneficio del público en general, y no se solicita en beneficio de una persona privada, “no es necesario hacer un requerimiento previo al funcionario encargado de ejecutar el acto”.(34)
*268 Además, y muy pertinente a las circunstancias del caso de autos, ya antes hemos resuelto que entre los factores a considerar cuando se solicita que un tribunal expida un auto de mandamus se encuentran: el posible impacto que éste pueda tener sobre los intereses públicos involucrados; evitar una intromisión indebida en los procedimientos del poder ejecutivo, y que el auto no se preste a confusión o perjuicio de los derechos de terceros.(35)
Por lo anterior, la expedición de un auto de mandamus no debe ser producto de un ejercicio mecánico. Los tribunales deben realizar un balance entre los intereses en conflicto, sin obviar la utilidad social e individual de la decisión.(36) Como dijimos en Díaz González v. Tribunal Superior, 102 D.P.R. 195, 199 (1974), citando a Dávila v. Superintendente de Elecciones, 82 D.P.R. 264, 283 (1960):
“En otras palabras, el remedio no se concede ex debito justitiae y tan pronto se reconoce el derecho del peticionario, sino úni-camente cuando el tribunal esté convencido de que se cumpli-rán propósitos de utilidad social e individual. Para esos fines, es indispensable estimar qué efectos tendrá la orden en el ade-cuado cumplimiento de las responsabilidades del funcionario afectado por ella y hasta qué punto habrá de beneficiar al solicitante. Procede, en síntesis, establecer el más fino equili-brio posible entre los diversos intereses en conflicto.”(37)
En fin, como hasta aquí hemos intimado, en la concesión del auto de mandamus deben considerarse no sólo los requisitos que imponen los estatutos orgánicos y nuestra jurisprudencia interpretativa al respecto, sino los factores que, sin intención de ser taxativos, se han mencionado. En ese contexto ya antes hemos reconocido que el factor más importante al evaluar la concesión de un auto de mandamus es el posible impacto que tal recurso *269 pudiera ocasionar al interés público.(38) A estos efectos ex-presamos que, “[d]e ordinario, el posible impacto público que tendrá la expedición del mandamus será proporcional a la importancia del deber ministerial que se alega ha sido incumplido y que se pretende vindicar mediante el mandamus”.(39) La “discreción” del auto y su relación con los remedios en equidad implica, entonces, que “el tribunal no está atado a un remedio fijo sino que se puede diseñar un remedio compatible con los intereses públicos envueltos”.(40)
Por último, es indudable que la carga probatoria en la concesión o denegación de un auto de mandamus descansa sobre el peticionario(41) Este tiene la obligación de demostrar la existencia de un deber ministerial que no ha cumplido el funcionario público contra quien se ha presentado el recurso. Una vez el tribunal entiende que el deber ministerial no ejecutado ha sido probado, aun así, el mandamus se puede denegar. Tal acción puede fundamentarse, entre otros, por factores como son la existencia de un impacto negativo al interés público superior al impacto positivo, si alguno, que producirá la concesión del auto o por la imposibilidad de cumplir con dicho deber ministerial.
Por lo tanto, una vez la parte demandante prueba la existencia de un deber ministerial y que éste no se ha cumplido, le corresponde al funcionario sobre quien recae tal deber ministerial la carga probatoria de demostrar que la concesión del auto afectaría negativamente un interés público mayor o que simplemente se le hace impo- *270 sible cumplir(42) Además, el funcionario, en su obligación de probar el detrimento al interés público que pudiera exi-mirlo de cumplir con el deber impuesto, no puede descan-sar meramente en sus alegaciones, sino que deberá presen-tar evidencia preponderante que coloque al tribunal en posición de constatar el impacto o perjuicio alegado. Sólo así podrá colocar al foro primario en posición de decidir si deniega el recurso conforme a la evidencia demostrativa del impacto perjudicial al interés público.
B. Ley Orgánica del Departamento de Educación
Es altamente conocido que la educación ocupa un sitial prominente en nuestro país. Tan es así que el derecho a la educación quedó plasmado en la Sección 5 del Artículo II de nuestra Constitución, la cual expresa que:
[t]oda persona tiene derecho a una educación que propenda al pleno desarrollo de su personalidad y al fortalecimiento del respeto de los derechos del hombre y de las libertades fundamentales. Habrá un sistema de instrucción pública el cual será libre y enteramente no sectario. La enseñanza será gratuita en la escuela primaria y secundaria y, hasta donde las facilidades del Estado lo permitan, se hará obligatoria para la escuela primaria(43)
El derecho a la educación es de tal importancia que los miembros de la Asamblea Constituyente incluyeron “el afán por la educación” como uno de los factores determi-nantes en nuestra vida como pueblo democrático(44)
*271 Por tal razón, este Tribunal también ha reconocido la importancia que disfruta la educación en nuestra jurisdicción. Así pues, hemos resuelto que el Estado tiene un interés apremiante en que la educación, tanto pública como privada, sea de excelencia.(45) Además, expresamente hemos apuntalado que “a través de la educación se imparte la preparación necesaria para que los ciudadanos participen en el desarrollo social y económico de nuestra vida colectiva”.(46)
En consecuencia, debido a las raíces constitucionales que nutren el derecho a la educación, nuestra Asamblea Legislativa ha creado y modificado en varias ocasiones las leyes que buscan hacer realidad dicho derecho. Como he-mos mencionado, éste intenta proveer a nuestros niños y adolescentes la oportunidad de recibir una educación de excelencia y que propenda al pleno desarrollo de su perso-nalidad, tal y como anhelaban los miembros de la Asam-blea Constituyente.
Así, pues, estos principios constituyeron la piedra angular de la Ley Orgánica del Departamento de Educación de Puerto Rico, Ley Núm. 149, supra, la cual se fundamenta sobre tres premisas básicas:
(1) El estudiante es la razón de ser del sistema educativo y el maestro su recurso principal.
(2) La interacción entre estudiantes y maestros constituye el quehacer principalísimo de la escuela. Las demás activida-des escolares, independientemente de su índole, se justifican sólo cuando facilitan la docencia, mejoran la gestión educativa o fortalecen los servicios de la escuela a la comunidad.
(3) Las escuelas pertenecen a las comunidades que sirven y éstas deben participar en su gobierno.(47)
*272 Por consiguiente, esta ley ha dispuesto un extenso con-glomerado de disposiciones que buscan hacer posible el prominente derecho constitucional a la educación.
Ahora bien, para poder disponer de la controversia ante nos es imperativo delinear lo que la ley orgánica establece con relación a las funciones, facultades y obligaciones del Secretario de Educación. Este es el responsable de dirigir y supervisar el conjunto de actividades académicas y administrativas del Departamento. Este principio ha estado vigente aun bajo la anterior Ley Orgánica del Departamento de Educación, Ley Núm. 68 de 28 de agosto de 1990.
 Interpretando la Ley Núm. 68, supra, este Tribunal resolvió que el Departamento constituye un sistema integrado, dirigido por el Secretario, quien ejerce todas las funciones ejecutivas, administrativas y operacionales de supervisión y planificación de su ley orgánica. (48) Sobre la forma de éste ejercer sus funciones, el Artículo 5.02 dis-pone que:
El Secretario encauzará la gestión educativa del Sistema a través de normas reglamentarias, de directrices de política pú-blica y de actividades de planificación, auditoría, fiscalización y evaluación de los procesos académicos y administrativos de las escuelas. Ejercerá las facultades ejecutivas inherentes a su cargo en los casos que [prevé la ley] o cuando entienda que sea necesario para salvaguardar la armonía y los intereses del Sistema de Educación Pública de Puerto Rico.(49)
Por consiguiente, el Secretario organizará, planificará, dirigirá, supervisará y evaluará las actividades académicas y administrativas del Departamento(50) Además, el Secretario es el “responsable de [{Implantar la política pública que la Asamblea Legislativa y el Gobernador adop- *273 ten con el fin de realizar los propósitos que la Constitución de Puerto Rico y [la Ley Orgánica del Departamento de Educación] pautan para el Sistema de Educación Pública”. (Énfasis suplido.)(51)
En relación con las escuelas, el Secretario será directamente responsable, entre otras cosas, de la planificación fiscal del Sistema y la asignación presupuestaria de cada una de éstas, así como de la auditoría fiscal y del examen de los procedimientos de personal. (52) Además, cuidará “que las escuelas de la comunidad, autónomas en su funcionamiento, se articulen dentro de un sistema educativo coherente, orientado por propósitos comunes”.(53)
Los Artículos 6.03 y 6.04 de la Ley Orgánica, supra, se-gún enmendados, enuncian un conglomerado de facultades y obligaciones del Secretario tanto en el ámbito académico como administrativo. En su función de Director Adminis-trativo del Sistema de Educación Pública de Puerto Rico, la ley dispone, entre otras obligaciones, que el Secretario, “[p] reparará y administrará el Presupuesto del Departa-mento, así como los fondos de origen externo que se le asig-naren a éste”.(54) Es responsable de adoptar la fórmula para determinar el presupuesto de las escuelas del Sis-tema, así como del nombramiento del personal del Departamento(55)
En el ámbito académico, el Secretario tiene la obligación de preparar un Plan de Desarrollo Integral *274 donde se establecerán los objetivos de corto y mediano plazo del Departamento y su plan de trabajo para alcanzarlos.(56) Este plan será de cinco años y se revisará anualmente. Entre las múltiples funciones académicas que desempeñará el Secretario, además de las antes referidas, se encuentran las siguientes:
(b) Organizará los programas de estudio del Sistema de Educación Pública con arreglo al patrón de grados y nive-les ....
(c) Establecerá un currículo básico para el Sistema de Edu-cación Pública con márgenes de flexibilidad suficientes para que las escuelas lo adapten a sus necesidades. Incluirá como requisito del currículo los cursos de educación física.
(d) Prescribirá el plan de estudios correspondiente a cada grado y nivel del Sistema. (Énfasis suplido. )(57)
C. La educación física
La educación física es la materia responsable de ayudar al desarrollo físico de los estudiantes. Por esto, es incuestionable la importancia que debe ocupar dentro del proceso educativo. El Departamento reconoció dicha importancia y la enunció en el marco curricular del programa de educación física.(58) En dicho marco, creado en el 2003 con la aprobación del entonces Secretario Dr. César Rey Hernández, se estableció, entre otras cosas:
El Programa de Educación Física provee al estudiante las ex-periencias necesarias para el desarrollo de las destrezas moto-ras indispensables y para alcanzar la madurez física que le permita funcionar eficientemente en el mundo de hoy.
A través de la educación física se estimula el pensamiento y se facilita el desarrollo de un ser humano autónomo, capaz de *275 dirigir su aprendizaje a través de las diferentes etapas de su uida.(59)
El enfoque filosófico del curso de educación física con-cibe esta disciplina académica como la práctica formal e informal de las actividades físicas en sus diversas expresiones.(60) Así, utiliza el movimiento del cuerpo como instrumento básico de aprendizaje, con el cual se influye positivamente en el desarrollo de la personalidad del estu-diante, promoviendo su formación social, ética, espiritual, motriz, cognitiva y afectiva.(61) Por tal razón, la educación física es esencial para lograr el desarrollo de un estilo de vida activo, significativo y saludable.(62) Así, pues, por la importancia que tiene la educación física, el propio Depar-tamento concibió la visión del Programa de manera abarcadora.(63)
Es notorio que la visión que guía al Programa de Edu-cación Física es amplia y meritoria. No sólo procura el de-sarrollo físico, sino que involucra diversas experiencias en pro de una integración personal plena del estudiante.
Sin embargo, como ya hemos mencionado, la Ley Núm. 149 —Ley Orgánica— supra, derogó tanto la Ley Núm. 68, supra, como la Ley Núm. 18 de 16 de junio de 1993, cono-cida como Ley para el Desarrollo de las Escuelas de la Co-munidad, e inadvertidamente, según admitido por la pro- *276 pia Asamblea Legislativa, eliminó el requisito de proveer educación física al estudiante de las escuelas públicas. Es en ese contexto que se crea la Ley Núm. 146, supra.
La Exposición de Motivos de dicho estatuto establece que, “[t] ornando en cuenta la importancia de la inclusión de esta materia en el currículo escolar, resulta procedente que la Asamblea Legislativa enmiende tal inadvertencia y promueva que se restituya la educación física como requisito en el sistema público de enseñanza”. También expresa que el “proceso educativo está incompleto si no se incluye la instrucción y educación física de los estudiantes como elemento fundamental en su formación”. (Énfasis suplido.)(64)
La Ley Núm. 146, supra, enmendó varios artículos de la Ley Orgánica.(65) El subinciso (4) del inciso (c) del Artículo 1.02 sobre Declaración de Propósitos expone lo siguiente en torno a que la escuela debe ayudar a sus alumnos a
... [a]dquirir conciencia de la necesidad de desarrollo de una buena condición física, haciendo énfasis en la importancia de ser saludables^ tanto en su dimensión física como en la mental y espiritual. (Enfasis suplido.)
Por su parte, el inciso (s) del Artículo 2.04, añade a las prioridades de las escuelas la asignación de “salones y facilidades adecuadas para los cursos regulares de educación física”.(66) El inciso (e) del Art. 3.03 establece que las escuelas deben promover “el desarrollo físico saludable a través del requisito de participación en los cursos de educación física”.(67)
*277 El Artículo 3.04 de la Ley Orgánica, artículo neurálgico a la controversia de autos, expone en lo pertinente lo siguiente:
Las escuelas proveerán a todos sus estudiantes con un mí-nimo de tres (3) horas semanales de educación física. Se ga-rantizará un maestro de educación física a cada escuela. Para el caso de escuelas con más de doscientos cincuenta (250) estu-diantes se nombrarán maestros adicionales por cada doscien-tos cincuenta (250) estudiantes o fracción. (Enfasis suplido.(68)
Por su parte, el inciso (c) del Artículo 6.03 de la Ley Orgánica, supra, sobre las facultades y obligaciones del Se-cretario en el ámbito académico, dispone que
[e]stablecerá un currículo básico para el Sistema de Educa-ción Pública con márgenes de flexibilidad suficientes para que las escuelas lo adapten a sus necesidades. Incluirá como requi-sito del currículo los cursos de educación física. (Enfasis suplido.(69)
El inciso (w) del mismo Artículo, a su vez, establece que el Secretario “[formulará un plan de dos (2) años, asignando los fondos necesarios para establecer cursos de educación física en todas las escuelas del Sistema”.(70)
En síntesis, las enmiendas a la Ley Orgánica antes ex-puestas exponen la clara intención legislativa sobre los be-neficios de la enseñanza de la educación física en las escue-las del sistema público, la prioridad que debe existir en la asignación de facilidades adecuadas y los requisitos de par-ticipación que deben promover las escuelas. Además, par-ticularmente señalan el mínimo de horas que de dicho curso se proveerán a los estudiantes, así como las disposi-ciones en torno a la cantidad específica de maestros a nombrar. A esto se le añade la disposición de que los cursos *278 de educación física serán parte de los requisitos del currí-culo escolar. Finalmente, la Asamblea Legislativa dispuso palmariamente el término de 2 años con el que contaba el Secretario para formular un plan que lo llevara a cumplir con el mandato de ley.
III
Debemos determinar inicialmente si el deber del Secre-tario de Educación de nombrar a los maestros de educación física adicionales, conforme al Artículo 3.04 de la Ley Or-gánica del Departamento de Educación, supra, es un deber ministerial o discrecional. Como reseñamos, el Artículo 3.04 dispone que a todos los estudiantes se les provea con un mínimo de tres horas semanales de educación física y que se garantice un maestro de educación física a cada escuela. Además, que en los casos de escuelas con más de doscientos cincuenta estudiantes se nombren maestros adicionales por cada doscientos cincuenta estudiantes o fracción.
Como bien señaló el foro apelativo intermedio, el re-clamo que hace la Asociación está claramente dentro de las funciones y los deberes asignados al Secretario. Y es que, en el caso de autos, la ley prescribe y define el deber a ser cumplido con extrema precisión y certeza. No deja espacio en la letra del estatuto para que pueda interpretarse otra cosa que no sea que el funcionario —en este caso el Secre-tario de Educación— no cuenta con discreción ante el lla-mado del deber señalado.
En lo pertinente, el Artículo 3.04 de la Ley Orgánica del Departamento de Educación es intensamente diáfano e in-sondablemente específico; existe un mandato de ley clara-mente definido y expreso. El legislador estableció específi-camente que toda escuela tenía que garantizar al menos un maestro de educación física en cada escuela pública del país. Además, la Asamblea Legislativa quiso ser más espe- *279 cífica al disponer, sin dar margen para la discreción, los pasos a seguir en las situaciones de escuelas que tuviesen más de doscientos cincuenta estudiantes. Ciertamente, el legislador manifestó en puridad que en dichos casos el acto a ejecutar era el nombramiento de un maestro adicional por cada doscientos cincuenta estudiantes adicionales o fracción. De la letra de la ley no surge nada que nos de-muestre que el legislador le proporcionó discreción al Se-cretario para cumplir con dicha directriz. Por el contrario, el legislador fue categórico al disponer el escenario y la actuación específica en la que el Secretario debía proceder.
Como hemos visto, el Secretario tiene unas obligaciones y unos deberes —establecidos por mandato de la Ley Or-gánica del Departamento— que son inherentes a su cargo y para los que goza de plena discreción en forma de ejecutarlos. Sin embargo, el Tribunal de Apelaciones deter-minó, conforme se colige de su decisión, que la discreción presupuestaria que tiene el Secretario en cierto sentido ab-sorbe, consume o diluye el deber impuesto por el Artículo 3.04, supra. No estamos de acuerdo. La existencia de dis-creción en la forma de cumplir con un deber ministerial, no lo transforma en discrecional. Aunque el Secretario tenga la discreción para realizar un análisis de juicio “evaluati-vo” y programático de su presupuesto, esto no es suficiente para revestir con dicha discrecionalidad todo deber im-puesto en la Ley Orgánica.
Cabe señalar aquí, que el presupuesto de un gobierno ha sido definido como un “programa que dirij[e] toda la actividad gubernamental en su función de orientar los pro-cesos sociales y servir a los intereses del pueblo”. (71) Así, los funcionarios ejecutivos gozan de amplia discreción en el ejercicio de dicha función. Sin embargo, esta función “está enmarcada dentro de normas legislativas preexistentes” *280 que los funcionarios ejecutivos no deben ignorar.(72) Por consiguiente, la discreción que posea un funcionario ejecu-tivo, en su función presupuestaria, no puede ser invocada para incumplir claras normas legislativas, en contraven-ción al balance de pesos y contrapesos entre la Rama Eje-cutiva y la Legislativa.
Por su parte, como hemos expresado, los tribunales debemos considerar cuáles fueron los fines que persiguió la Asamblea Legislativa al aprobar una ley y nuestra determinación debe atribuirle un sentido que asegure el resultado que originalmente se quiso obtener. (73) “[N]uestra obligación fundamental debe ser imprimirle efectividad a la intención legislativa, propiciando de esta forma la realización del propósito que persigue la ley.”(74) El caso ante nos no es la excepción.
Por ejemplo, al examinar el inciso (c) del Artículo 6.03 de la Ley Orgánica del Departamento, vemos que el Secre-tario goza de discreción y flexibilidad en la confección del currículo básico del Sistema. Sin embargo, se ordena ex-presamente que dicho currículo incluya como requisito los cursos de educación física. Por consiguiente, conforme a la ley, el Secretario no tiene facultad para eliminar los cursos de educación física del currículo. No dudamos que la Asam-blea Legislativa, para asegurarse del cumplimiento de este mandato, estipuló en el Artículo 3.04 lo relacionado a los nombramientos de maestros de educación física.
Del examen paciente y riguroso de los objetivos legisla-tivos, es indudable que al redactar la Ley Núm. 146 el legislador estableció la importancia del curso de educación física en el sistema escolar de Puerto Rico. Las enmiendas que dicha ley introdujo a la Ley Orgánica del Departa- *281 mentó fueron claras y específicas al expresar que el “pro-ceso educativo está incompleto si no incluye la instrucción y educación física de los estudiantes como elemento fundamental en su formación”.(75) Acorde con esta intención, la Asamblea Legislativa dispuso expresa y específicamente, y sin margen a la discreción, el deber de nombrar los maestros adicionales para su debido cumplimiento.
De acuerdo con lo anterior, el Departamento de Educa-ción reconoció que con la aprobación de la Ley Núm. 146 se estableció “la enseñanza de la educación física con carácter de obligatoriedad en todos los grados del Sistema Público de Enseñanza y con un mínimo de ofrecimiento de tres horas a la semana”(76) (Énfasis suplido.) Además, los pasa-dos Secretarios, Dr. César Rey Hernández y Dr. Rafael Aragunde, señalaron en sendas cartas circulares lo si-guiente sobre la política pública del Programa de Educa-ción Física:
En su exposición de motivos, la Ley Núm. 146 establece que el proceso educativo está incompleto si no incluye la instrucción de la educación física como parte de la formación del estudiante.
En la Ley se reconoce la importancia de que la escuela ayude a los estudiantes a adquirir conciencia para desarrollar una buena condición física, con énfasis en la salud física, mental y espiritual. La Ley está en armonía con las recomendaciones de la Asociación Nacional para el Deporte y la Educación Física de los Estados Unidos de Norteamérica (NASPE) y la Asocia-ción de Educación Física y Recreación de Puerto Rico (AEFR). Ambos grupos profesionales recomiendan el ofrecimiento de la educación física como asignatura regular y requerida para to-dos los estudiantes en todos los grados escolares.
La Ley Núm. 146 especifica en el Artículo 2.04 que en las escuelas se asignarán salones e instalaciones adecuadas para los cursos regulares de educación física y que se promoverá el desarrollo físico saludable a través del requisito de participa-ción en los cursos de educación física. El Artículo 3.04 ordena a las escuelas del sistema público a proveer a todos sus estu- *282 diantes un mínimo de tres (3) horas semanales de educación física y establece que cada escuela debe contar con los maestros necesarios para atender su matrícula.
En el inciso 3.03 de la Ley Núm. 146 se estipula que se debe promover el desarrollo físico del estudiante por medio de su participación en los cursos del Programa. (Enfasis suplido.)(77)
Hemos de notar que la letra del Artículo 3.04 de la Ley Orgánica es clara en su mandato. Determinar que en este caso el deber de nombrar los maestros de educación física adicionales es un deber discrecional —como erróneamente concluye el foro apelativo intermedio— convertiría el ejer-cicio legislativo en un procedimiento fútil. Y es que, al es-tablecerse un mandato que de su propia faz no es discre-cional, debemos presumir que el legislador consideró las consecuencias presupuestarias que éste acarrearía, corres-pondiendo entonces al funcionario a quien atañe el cumpli-miento de ese deber ministerial la asignación o solicitud de los fondos necesarios para cumplir con el mandato de ley.
Era esa presunción la que el Secretario estaba obligado a destruir con prueba preponderante, y convencer al foro primario, como parte del análisis de los factores que está obligado a considerar, que no era posible cumplir con el deber ministerial, sin que se afectaran los fondos destina-dos para otros asuntos concernientes , al interés público.
Han transcurrido diez años desde que se aprobó la Ley Núm. 146, supra, y el Secretario aún no ha cumplido con el deber ministerial antes expuesto. Durante este periodo de tiempo sólo se han contratado cerca de cuatrocientos maes *283 tros de educación física adicionales.(78) De 2,367 maestros de educación física existentes para el 2000, hoy existen poco más de dos mil setecientos, cifra que se ha mantenido sin cambios sustanciales desde el 2004.(79)
El argumento principal del Departamento en el caso de autos es que, dado el impacto presupuestario que suponen los nombramientos conforme lo establece el Art. 3.04, la creación de todas las plazas adicionales necesarias en un término de cuatro años “afectaría el cumplimiento de otras obligaciones ...”. No obstante, el Departamento no pre-sentó prueba que persuadiera al foro primario de esas “otras obligaciones” que alegadamente se afectarían al in-tentar cumplir cabalmente el deber ministerial impuesto.
Por otro lado, surge ostensiblemente del historial legis-lativo de la Ley Núm. 146, que la Comisión de Educación y Cultura de la Cámara de Representantes conocía sobre las repercusiones económicas que las enmiendas ocasionarían, a través de una comunicación hecha por la Asociación de Educación Física y Recreación de Puerto Rico. En ésta se advirtió sobre el costo aproximado de treinta y dos millo-nes de dólares que implicarían los cambios, sólo en con- *284 cepto de nómina.(80) Por lo tanto, la Asamblea Legislativa tuvo presente el impacto presupuestario que las enmien-das acarreaban.
Evidentemente, el cumplimiento de todo deber ministerial, por tenue que sea, conlleva la erogación de fondos de un presupuesto que, como regla general, el propio funcio-nario está obligado a administrar. De manera que, si no se cuenta con una partida presupuestaria para dar cumpli-miento a ese deber ministerial, ciertamente ello podría afectar otras partidas para las cuales sí se había presupuestado. No obstante, como advertimos anterior-mente, tal circunstancia tenía que haber sido objeto de prueba. Se debía convencer al juzgador de que la concesión del recurso provocaba irremediablemente un déficit en otras partidas, que no podría ser subsanado, no empece la pericia administrativa del funcionario. Además, el funcio-nario debió demostrar que dicho déficit, a su vez, afectaba otros servicios que se enmarcan en un interés público superior al deber ministerial que el auto de mandamus busca hacer cumplir.
De otra parte, opinamos que la expedición del mandamus, en el caso de autos, favorece el interés público. ¿O es que el pleno desarrollo de nuestros niños y adolescentes no es un interés público de alto rango? ¿Permitiremos que se continúe ignorando el programa de educación física y las necesidades de los maestros y estudiantes en claro contra-sentido con la clara expresión e intención legislativa? De ninguna manera.

Por todo lo anterior, concluimos que no erró el Tribunal de Primera Instancia al determinar que el deber impuesto en el Art. 3.04 de la Ley Orgánica del Departamento de Educación, con relación al nombramiento de maestros adi-cionales y el mínimo de horas semanales de educación fí-
*285
sica, es un deber ministerial y que, por lo tanto, procedía expedir el auto de “mandamus” solicitado por la Asociación de Maestros.

IV
A. Situación económica actual como factor para el diseño del remedio
Como sabemos, las determinaciones judiciales no deben operar en un vacío, sino que necesariamente deben ajus-tarse a la realidad que vive la sociedad sobre la cual han de implantarse. Así, pues, nos consta la difícil realidad econó-mica que afronta el País.
Consideramos que la discreción que nos otorga el auto de mandamus, junto a su naturaleza de remedio en equi-dad, nos permite diseñar un remedio compatible con los intereses públicos involucrados y no nos ata a un remedio fijo.(81) Por tal razón, y a base de los cambios fácticos que pueden haber ocurrido en el transcurso del litigio, la reali-dad económica actual, el interés en fomentar una educa-ción de excelencia y nuestra discreción de diseñar un plan compatible con todos los intereses involucrados, entende-mos que es acertada la disposición del Tribunal de Primera Instancia de ordenarle al Secretario que preparara un plan de nombramientos que tuviese como objetivo cumplir con el mandato de ley conforme a la capacidad del Departamento. No obstante, por los fundamentos antecedi-dos, el plan debe ser elaborado con premura y, una vez sea estructurado en el Tribunal de Primera Instancia, éste de-berá ser cumplido en un término de dos años.
V
En armonía con lo antes señalado, se revoca la Senten-cia del Tribunal de Apelaciones, Región Judicial de San *286 Juan; se confirma la Sentencia del Tribunal de Primera Instancia, Sala Superior de San Juan, y se devuelve el caso a ese Tribunal para ulteriores procedimientos compatibles con lo aquí resuelto. De acuerdo con el Art. 3.04 y el Art. 6.03(w) de la Ley Orgánica del Departamento de Educa-ción, supra, el Secretario deberá presentar un plan que tenga como objetivo cumplir a cabalidad con el mandato de ley, conforme a la capacidad del Departamento. Una vez el plan sea estructurado en el Tribunal de Primera Instancia éste deberá ser cumplido en un término de dos años.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Fiol Matta emitió una opi-nión de conformidad. La Juez Asociada Señora Rodríguez Rodríguez disintió con una opinión escrita. El Juez Aso-ciado Señor Martínez Torres disintió con la siguiente ex-presión: “El Juez Asociado Señor Martínez Torres disiente por la falta de justiciabilidad de esta controversia debido a la ausencia de legitimación activa de la parte peticionaria, Asociación de Maestros de P.R.” La Jueza Asociada Señora Pabón Charneco disintió con una opinión escrita.
— O —

 3 L.P.R.A. sec. 143a et seq.

 El recurso fue presentado el 17 de noviembre de 2003.

 Sentencia emitida por el Juez Superior, Hon. Carlos S. Dávila Vélez, el 27 de septiembre de 2004.

 Sentencia de 30 de junio de 2005 y archivada en autos el 19 de julio de 2005.

 Véase Apéndice del Certiorari, pág. 11.

 íd.

 El recurso de certiorari fue presentado el 17 de agosto de 2005.

 Art. 649 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 3421.

 Rodríguez v. Corte, 53 D.P.R. 575, 577 (1938). Véanse, además: Maldonado v. Programa Emergencia de Guerra, 68 D.P.R. 976 (1948); Abella v. Tugwell, Gobernador, 68 D.P.R. 464 (1948); Nine v. Ortiz, 67 D.P.R. 940 (1947); Rexach & Piñero v. Sancho Bonet, Tes., 57 D.P.R. 337 (1940); D. Rivé Rivera, Recursos Extraordinarios, 2da ed. rev., San Juan, Programa de Educación Jurídica Continua de la Universidad Interamericana de Puerto Rico, 1996, pág. 111.

 Rivé Rivera, op. cit., pág. 111.

 Espina v. Calderón, Juez, y Sucn. Espina, Int., 75 D.P.R. 76, 84 (1953); Pueblo v. La Costa, Jr., Juez, 59 D.P.R. 179 (1941); Álvarez de Choudens v. Tribunal Superior, 103 D.P.R. 235, 242 (1975); Rodríguez Carlo v. García Ramírez, 35 D.P.R. 381, 384 (1926); Pagán v. Towner, 35 D.P.R. 1, 3 (1926); Véase, además, Rivé Rivera, op. cit., pág. 107.

 Partido Popular v. Junta de Elecciones, 62 D.P.R. 745, 749 (1944).

 R. Hernández Colón, Derecho Procesal Civil, 4ta ed., San Juan, LexisNexis, 2007, pág. 477.

Álvarez de Choudens v. Tribunal Superior, supra; Rodríguez Carlo v. García Ramírez, supra; Pagán v. Towner, supra.

 íd.

 Partido Popular v. Junta de Elecciones, supra.

 Hernández Agosto v. Romero Parceló, 112 D.P.R. 407, 418 (1982).

 íd.

 Id.; Banco de Ponce v. Srio. Hacienda, 81 D.P.R. 442, 450 (1959).

 Art. 650 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 3422; Lutz v. Post Gobernador de Puerto Rico, 14 D.P.R. 860, 869-870 (1908); Noriega v. Hernández Colón, 135 D.P.R. 406, 449 (1994).

 Art. 650 del Código de Enjuiciamiento Civil, supra. Véase, además, Rivé Rivera, op. cit., pág. 117.

 Asoc. Pesc. Pta. Figueras v. Pto. del Rey, 155 D.P.R. 906, 921 (2001).

 Fund. Arqueológica v. Depto. de la Vivienda, 109 D.P.R. 387, 391 (1980); Cerame-Vivas v. Srio. de Salud, 99 D.P.R. 45 (1970); Asociación de Maestros v. Pérez, Gobernador Int., 67 D.P.R. 848 (1947).

 Asociación de Maestros v. Pérez, Gobernador Int., supra, pág. 851.

 Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14; Silva v. Adm. Sistemas de Retiro, 128 D.P.R. 256, 269 (1991).

 Romero Barceló v. E.L.A., 169 D.P.R. 460, 476-477 (2006). Véase Ortiz v. Municipio San Juan, 167 D.P.R. 609, 617 (2006).

 Esso Standard Oil v. A.P.P.R., 95 D.P.R. 772, 784-785 (1968).

 Matos v. Junta Examinadora, 165 D.P.R. 741, 748-749 (2005).

 Ortiz v. Muñoz, Alcalde de Guayama, 19 D.P.R. 850 (1913).

 Hernández Colón, op. cit.

 32 L.P.R.A. Ap. III.

 Véanse: Noriega v. Hernández Colón, supra, págs. 448-449; Dávila v. Superintendente de Elecciones, 82 D.P.R. 264 (1960); Medina v. Fernós, Comisionado, 64 D.P.R. 857 (1945); Urdaz v. Padín, Comisionado, 48 D.P.R. 306 (1935); Suárez v. Corte, 65 D.P.R. 850 (1946); Espina v. Calderón, Juez, Sucn. Espina, Int., supra, pág. 81; Martínez Nadal v. Saldaña, 33 D.P.R. 721 (1924).

 Rivé Rivera, op. cit., pág. 125. Véanse, además: Noriega v. Hernández Colón, supra, págs. 448-449; Medina v. Fernós, Comisionado, supra; Urdaz v. Padín, Comisionado, supra; Suárez v. Corte, supra; Espina v. Calderón, Juez, Sucn. Espina, Int., supra; Martínez Nadal v. Saldaña, supra, pág. 736.

 Véase Hernández Colón, op. cit., pág. 478. Por tal razón, como veremos más adelante, en el caso de autos nos encontramos ante un deber de carácter público, que afecta no sólo a los maestros de educación física, sino también a los estudiantes del Sistema de Educación Pública de Puerto Rico, por lo que entendemos que el reque-rimiento previo era innecesario.

 Íd.; Lutz v. Post Gobernador de Puerto Rico, supra, pág. 878.

 Dávila v. Superintendente de Elecciones, supra, pág. 284.

 Véanse, además: Maisonave v. Domenech, Tesorero, 45 D.P.R. 247, 251-252 (1933); Ortiz v. Muñoz, Alcalde de Guayama, supra, pág. 856; State v. Knop, 190 So. 135, 146-148 (La. 1939).

 Noriega v. Hernández Colón, supra, pág. 448.

 Báez Galib y otros v. C.E.E. II, 152 D.P.R. 382, 392 (2000).

 Rivé Rivera, op. cit., pág. 112.

 Véanse: Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656,680 (1997); P.R. Telephone Co. v. Tribunal Superior, 103 D.P.R. 200, 202 (1975), donde sostuvimos que en casos de recursos extraordinarios —específicamente en interdictos prelimina-res— la obligación de presentar evidencia recae sobre el peticionario. Véase, además, Regla 10(B) de Evidencia, 32 L.P.R.A. Ap. IV.

 State v. Knop, supra. Además, en situaciones donde se plantee la escasez de fondos como motivo para incumplir con el deber ministerial, se ha entendido que el funcionario demandado es el que tiene el conocimiento y, por ende, la carga de de-mostrarle al tribunal la prueba que sustenta su alegación. Véase F.G. Ferris y F.G. Ferris, Jr., The Law of Extraordinary Legal Remedies, St. Louis, Ed. Thomas Law Book Company, 1926, págs. 305-306 (“In this kind of a case however, the better rule is that absence of funds is a matter of defense which should be set up in the return, with the burden on respondent to prove such an absence, for the obvious reason that such fact lies peculiarly within the knowledge of the officer whose duty it is to keep the funds and can rarely if ever be certainly known by any other”).

 Art. II, Sec. 5, Const. E.L.A., L.P.R.A, Tomo 1, 2008, pág. 292.

 Véase Preámbulo de la Constitución del Estado Libre Asociado de Puerto *271 Rico, L.P.R.A., Tomo 1. Véase, además, Asoc. Maestros P.R. v. Srio. Educación, 137 D.P.R. 528, 569, esc. 19 (1994), opinión de conformidad de la Jueza Asociada Señora Naveira de Rodón.

 Asoc. Academias y Col. Cristianos v. E.L.A., 135 D.P.R. 150, 164 (1994).

 íd. Véase De Paz Lisk v. Aponte Roque, 124 D.P.R. 472 (1989).

 Art. 1.02, Sec. (b)(1), (2) y (3) de la Ley Núm. 149 de 15 de julio de 1999, según enmendado.

 Hernández v. J. Apel. Sist. Educ. Pub., 147 D.P.R. 840, 845 (1999). Véase Op. Sec. Just. Núm. 2002-1.

 3 L.P.R.A. sec. 145e.

 Art. 6.02(b), 3 L.P.R.A. sec. 145s(b).

 Art. 6.02(a), 3 L.P.R.A. sec. 145s(b).

 Art. 5.03(d) y (f), 3 L.P.R.A. sec. 145f(d) y (f).

 Art. 6.02(e), 3 L.P.R.A. see. 145s(c). Además, “la autonomía operacional otor-gada a las escuelas de la comunidad bajo la Ley Orgánica del Departamento de Educación no priva al Secretario de Educación de su facultad para promulgar nor-mas generales para el gobierno del Sistema de Educación Pública, ni lo releva de la obligación de velar por que no se quebrante el sentido de unidad y propósito del Sistema en su conjunto, por lo cual el Secretario de Educación debe implantar las normas y reglamentos relacionados con la administración de las escuelas”. Op. See. Just. Núm. 2002-1.

 Art. 6.04(n), 3 L.P.R.A. sec. 145u(n).

 Aj,j. 6.04(a) y (Z), 3 L.P.R.A. sec. 145u(a) y (Z).

 Art. 6.03(a), 3 L.P.R.A. sec. 145t(a).

 Art. 6.03(b), (c) y (d), 3 L.P.R.A. sec. 145t(b), (c) y (d).

 Marco Curricular del Programa de Educación Física, Instituto Nacional para el Desarrollo Curricular, Departamento de Educación, 2003, http://dde.pr/ dePortal/Descargas/Aeademicos/marcos/EdPisica.pdf (última visita febrero 05 de 2010), sobre el cual tomamos conocimiento judicial conforme a la Regla 11 de Evi-dencia, 32 L.P.R.A. Ap. IV.

 íd., págs. 6-7.

 íd., pág. 1.

 íd.

 íd.

 Se señala, además, que:
“El Programa de Educación Física pretende desarrollar individuos que se cons-tituyan en personas educadas físicamente, que posean las destrezas, los conocimien-tos y las a[p]titudes necesarias para moverse en una variedad de formas, en armonía con su medio físico y sus semejantes, y capaces de seleccionar la actividad de movi-miento más adecuada a sus propósitos personales con el interés de hacerla parte de su estilo de vida. Asimismo será un ser humano conocedor de los procesos que le permitan dirigir sus propios aprendizajes, con la capacidad de trabajar en grupo y de ser un ciudadano productivo que exhiba dominio de la tecnología, y esté comprome-tido con la protección y mejoramiento del ambiente para el disfrute de todos y defen-sor de nuestra cultura.” íd., pág. 9.

 Exposición de Motivos de la Ley Núm. 146, supra, 2000 Leyes de Puerto Rico 98.

 3 L.P.R.A. sec. 143a et seq. Se añadió un nuevo subinciso al inciso (c) del Artículo 1.02, un nuevo inciso (s) al Artículo 2.04, un nuevo inciso (e) al Artículo 3.03, y un nuevo Artículo 3.04. Además, se enmendaron los incisos (c) y (t) del Artículo 6.03 para establecer la educación física como requisito en el proceso de enseñanza del Sistema de Escuelas Públicas de Puerto Rico.

 3 L.P.R.A. sec. 143f(s).

 3 L.P.R.A. sec. 144c(e).

 3 L.P.R.A. sec. 144c-l.

 3 L.P.R.A. sec. 145t(c).

 3 L.P.R.A. sec. 145t(w).

 P. Muñoz Amato, Introducción a la Administración Pública, México, Fondo de Cultura Económica, 1954, pág. 141.

 Id., pág. 173. Véanse: R. Borja y Borja, Teoría general del derecho administrativo, Buenos Aires, Eds. Depalma, 1985, págs. 356-357; A. Rodríguez Bereijo, El Presupuesto del Estado, Madrid, Ed. Tecnos, 1970, págs. 20-21.

8) Vargas v. Retiro, 159 D.P.R. 248, 263 (2003).

 íd.

 Exposición de Motivos de la Ley Núm. 146, supra, pág. 980.

 Marco Curricular del Programa de Educación Física, supra, pág. 73.

 Carta Circular Núm. 8-2007-2008, Política Pública sobre la Organización del Programa de Educación Física en los niveles elemental y secundario de las escue-las públicas de Puerto Rico, pág. 2, http://www.de.gobierno.pr/sites/de.gobiemo.pr/ files/cartas/08-2007-2008.pdf (Consulta de febrero 8 de 2010), acerca de la cual to-mamos conocimiento judicial conforme a la Regla 11 de Evidencia, 32 L.P.R.A. Ap. IV. Véase Carta Circular Núm. 18-2002-2003, normas para la enseñanza y el funciona-miento del Programa de Educación Física en los niveles elemental y secundario de las escuelas públicas de Puerto Rico, pág. 2, Marco Curricular del Programa de Educa-ción Física, supra, págs. 75-89.

 Véanse: Presupuesto del Departamento de Educación de los años fiscales 2000-2001 al 2009-2010, http://www.presupuesto.gobierno.pr (Consulta de febrero 8 de 2010), acerca de los cuales tomamos conocimiento judicial conforme a la Regla 11 de Evidencia, 32 L.P.R.A. Ap. IV. Véase, además, Alegato del Procurador General.

 Id. Cabe señalar que tanto el Procurador General en su alegato, como el propio Departamento de Educación en su recurso ante el Tribunal de Apelaciones, expresaron que dicho Departamento había creado setecientas veintiséis plazas adi-cionales de maestros de educación física. Sin embargo, más allá de estas alegaciones no encontramos prueba que compruebe la información.
De hecho, al examinar los presupuestos del Departamento del 2000 al 2009, éstos no reflejan la cantidad alegada. Al contrario, los presupuestos reflejan pocos cambios, siendo el mayor en el 2004 y no alcanza las quinientas plazas nuevas. Esto en contraposición con el mandato del presupuesto recomendado del 2002, el cual expresaba que:
“Este presupuesto incluye recursos para el nombramiento de 500 nuevos maestros de educación física, como fase inicial para brindarle a todos nuestros estudiantels] la oportunidad de desarrollarse, tanto física como mentalmente en un ambiente adecuado dentro del sistema público de enseñanza.” (Enfasis suplido.) Pre-supuesto del Departamento de Educación para el año fiscal 2001-2002.

 Véase Comunicación de la Asociación de Educación Física y Recreación de Puerto Rico al Hon. Tomás Bonilla Feliciano, Presidente de la Comisión de Educa-ción y Cultura de la Cámara de Representantes, de 7 de marzo de 2000, sobre el P. de la C. 2970.

 Véase Rivé Rivera, op. cit., págs. 111-112.