Partido Popular Democrático, Luis Muñoz Marín y Vidal González Rolón, peticionarios, *v.* Junta Insular de Elecciones de Puerto Rico, etc., demandada.

Núm. 394.—*Sometido:* Enero 10, 1944. *Resuelto:* Enero 12, 1944.

*Samuel R. Quiñones,* abogado de los peticionarios.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

El 4 de enero de 1944, durante el receso de Navidad que expiró el 9 del actual, los peticionarios radicaron en este Tribunal la solicitud de *mandamus* de este caso. El propósito perseguido por los peticionarios es que mediante un auto perentorio de mandamus ordenemos a la Junta Insular de Elecciones de Puerto Rico a que, contrario a lo resuelto por ella, establezca colegios de inscripción en la zona rural de ciertos municipios que se mencionan en la petición. Exponen los peticionarios las razones que a su juicio les asisten para que se expida el auto de mandamus, las más importantes de las cuales son:

(*a*) Que en los distintos barrios rurales en que los peticionarios solicitan se establezcan colegios de inscripción, existen locales apropiados para ese efecto;

(*b*) Que en muchos de esos barrios rurales no existen adecuados medios de comunicación que faciliten a los nuevos electores trasladarse con la necesaria rapidez a los colegios de inscripción en la zona urbana respectiva;

(*c*) Que en la actualidad existen menos vehículos, tanto públicos como privados, en comparación con los que para esta misma fecha existían hace cuatro años;

(*d*) Que existe escasez de gasolina con motivo de la situación de guerra prevaleciente desde el 8 de diciembre de 1941;

(*e*) El hecho de haberse reducido a dos, uno para varones y otro para mujeres, los días disponibles para la inscripción, mientras que hace cuatro años se concedieron muchos más días para ese objeto;

(*f*) Que de no establecerse los colegios de inscripción en las zonas rurales como lo solicitan los peticionarios, la mayor parte de los nuevos electores del Partido Popular Democrático resultarían privados de su derecho a inscribirse y consecuentemente de su derecho al sufragio;

(*g*) Que con motivo de haberse establecido todos los colegios electorales en la zona urbana durante las elecciones celebradas el 5 de noviembre de 1940 no ejercieron su derecho al sufragio 146,109 de los electores inscritos, quienes tendrán que inscribirse nuevamente por haber sido eliminados de las listas electorales;

(*h*) Que la población electoral actualmente capacitada para votar excede de 959,259 ciudadanos, de los cuales únicamente aparecen inscritos 568,851, y consecuentemente deberán inscribirse para votar más de 390,408 ciudadanos, de los cuales más de dos terceras partes residen en los barrios rurales de Puerto Rico;

(*i*) Que el propósito de la Ley núm. 19 de 10 de junio de 1939 *Para Establecer un Nuevo Sistema de Inscripción de Electores,* es el de que hasta donde fuere posible los cole-

gios de inscripción se establezcan en los barrios de las residencias de los electores respectivos.

No es ésta la primera vez que el Partido Popular Democrático acude a este Tribunal en solicitud del mismo remedio contra igual resolución de la Junta Insular de Elecciones de Puerto Rico. En efecto, el 19 de diciembre de 1939 radicó una petición de mandamus basada en razones similares a las que ahora expone en apoyo de la presente solicitud.

Siendo aquella la primera vez que se suscitó la cuestión, este Tribunal estimó oportuno entonces expedir un auto alternativo de mandamus. Oída una extensa evidencia y los informes de los abogados de las partes, se dictó una breve resolución desestimando la petición de mandamus.

Vuelve el peticionario a recurrir a este Tribunal en solicitud del mismo remedio, pero las razones adicionales que ahora se exponen no ameritan una decisión distinta de la que dictáramos en el caso anterior, por lo que es inútil expedir el auto alternativo, ya que en todo caso tendríamos que llegar indefectiblemente a la misma conclusión a que llegáramos en el caso anterior. Sin embargo, por deferencia a los peticionarios, toda vez que se han expuesto ahora las razones adicionales de que hemos hecho mención, parece conveniente decir algo más en apoyo de nuestra decisión.

La disposición legal reguladora del caso es la sección 12 de la Ley núm. 19 de 10 de junio de 1939 (Segunda Sesión Extraordinaria, pág. 57) que literalmente dice:

"Los colegios de inscripción se establecerán en los edificios públicos bien sean insulares o municipales, hasta donde sea posible obtenerlos.

"Estos colegios *podrán establecerse* en las zonas rurales siempre que haya locales apropiados. La Policía Insular proveerá el servicio de policía que fuere menester en cada colegio de inscripciones. La Junta Insular de Elecciones *deberá tener* en cuenta que es el propósito de esta Ley el que, *hasta donde fuere posible,* los colegios de inscripción se establezcan en los barrios de las residencias de los electores respectivos." (Bastardillas nuestras.)

Aunque el legislador manifestó expresamente en el precepto transcrito su propósito de que *hasta donde fuere posible* los colegios de inscripción se establecerán en los barrios de las residencias de los electores respectivos, es evidente su propósito de dejar a la sana discreción de la Junta el determinar la cuestión, al prescribir que los colegios *podrán* establecerse [en la edición inglesa *"may be established"*] en las zonas rurales siempre que hayan locales apropiados. Se notará que el legislador autoriza, pero no ordena a la Junta que establezca dichos colegios en las zonas rurales. Y si bien expresó su propósito de que en lo posible se establezcan en los barrios donde residan los electores respectivos, esa manifestación de la Legislatura es una mera recomendación que la Junta sin duda tuvo en cuenta al ejercitar su discreción estableciendo colegios en las zonas rurales de algunos municipios y negándose a establecerlos en aquéllos a que se refiere la solicitud. Esta misma interpretación de la ley al efecto de que el deber de la Junta envuelto en este caso no es un deber ministerial, fué lo que nos obligó a desestimar la petición de mandamus el 23 de diciembre de 1939 (55 D. P.R. 987). Desde entonces la Asamblea Legislativa de Puerto Rico se ha reunido cuatro veces en sesión ordinaria y no ha estimado conveniente adoptar la legislación necesaria para evitar la interpretación que hemos dado a dicho precepto legal. ¿Acaso no es esa circunstancia la mejor evidencia de que la interpretación que entonces dimos a la ley se ajusta al verdadero propósito legislativo? Tal vez se alegan ahora razones de más peso que las que se alegaron entonces, surgidas de la situación anormal por que atravesamos con motivo del estado de guerra en que se encuentra la Nación. Pero ese estado de guerra existe desde el 8 de diciembre de 1941 y la situación que ahora prevalece ha existido desde entonces, y sin embargo en las dos últimas sesiones ordinarias nada se ha hecho por la Asamblea Legislativa para variar el texto de la ley. Sea como fuere, todas las nuevas

razones que ahora se exponen, sin duda fueron tenidas en cuenta por la Junta, lo mismo que los inconvenientes que podrían alegarse en contra de la medida interesada por los peticionarios, y la Junta usó su discreción en el sentido que ya conocemos.

La Junta actuó. De no haber actuado el auto de mandamus procedería para, sin indicarle en qué sentido debía hacerlo, compelerla a actuar. Pero dictada por ella la decisión, sea en uno u otro sentido, el mandamus no tiene aplicación. *Pueblo* v. *La Costa Jr.*, 59 D.P.R. 179.

Parece conveniente repetir aquí lo que sobre el alcance del recurso extraordinario de mandamus ha dicho la Corte Suprema de Estados Unidos:

"Bajo la regla bien establecida, el auto de mandamus no puede servir el propósito de un pleito ordinario. Se expedirá solamente cuando el deber que deba ser ejecutado sea ministerial y la obligación de actuar perentoriamente esté claramente definida. La ley debe no sólo autorizar la acción que se requiera del funcionario, *sino exigirla; el deber debe ser claro e indiscutible.* U. S. ex rel. International Contracting Co. v. Lamont, 155 U. S. 303, 308; Louisiana v. McAdoo, 234 U. S. 627, 633; Work v. Rives, 267 U. S. 175." (Bastardillas nuestras.) *U. S.* v. *Wilbur* (1931) 283 U. S. 414, 420.

En el presente caso no existen los requisitos que deben concurrir para que el auto de mandamus pueda ser expedido. La ley que interpretamos autoriza a la Junta a actuar en la forma que pretenden los peticionarios. Pero no le exige que necesariamente actúe de esa manera. *Por consiguiente procede denegar la solicitud de mandamus.*

El Juez Asociado Sr. Snyder no intervino.