FEstado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| MICHAEL ESAU HALOW <br><br> Apelante <br><br><br> v. <br><br><br> NEGOCIADO DE LA POLICÍA DE PUERTO RICO, ESTADO LIBRE ASOCIADO DE PUERTO RICO <br><br> Apelados | KLAN202301068 | Apelación Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan <br><br><br> Civil Núm.: SJ2023CV07914 <br><br><br> Sobre: MANDAMUS; SENTENCIA DECLARATORIA; LEY DE ARMAS |
|---|---|---|

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Marrero Guerrero

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 8 de febrero de 2024.

### I.

El 29 de noviembre de 2023, el señor Michael Esau Halow (señor Esau Halow o apelante) presentó una *Apelación* ante esta Curia en la que solicitó que revoquemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de San Juan (TPI o foro primario), el 13 de octubre de 2023, notificada y archivada en autos ese mismo día.[1] En su dictamen, el TPI desestimó una *Demanda de mandamus* promovida por el apelante en solicitud de una orden al Negociado de la Policía de Puerto Rico (Negociado o parte apelada) de proveer la información utilizada para descualificarlo de la obtención de una licencia de armas, así como cesar la denegatoria

---

[1] Apéndice de la *Apelación*, Anejo 1, págs. 1-31.

del permiso. A juicio del foro primario, la reclamación no justificó la concesión de un remedio.

El 1 de diciembre de 2023, emitimos una *Resolución* en la que le concedimos al Negociado hasta el 29 de diciembre de 2023 para presentar su alegato en oposición a la *Apelación*.

El 28 de diciembre de 2023, el Negociado radicó una *Solicitud de término* en la que informó que se encontraba revisando el expediente y preparando el borrador del escrito que pretendía presentar. Viéndose imposibilitado de presentar su alegato responsablemente dentro del término reglamentario, solicitó un plazo adicional de siete (7) días laborales para presentarlo.

El 8 de enero de 2024, emitimos una *Resolución* en la que le concedimos al Negociado un término final hasta el 19 de enero de 2024 para presentar su alegato en oposición.

El 19 de enero de 2024, el Negociado radicó un *Alegato en oposición* en el que solicitó que se confirmara la *Sentencia* apelada por ser conforme a derecho.

Contando con el beneficio de la comparecencia de las partes, pormenorizaremos los hechos procesales atinentes a la *Apelación*.

**II.**

El 19 de agosto de 2023, el señor Esau Halow presentó una *Demanda de Mandamus* en la que solicitó al TPI que le ordenara al Negociado a proveer toda la información que descualificaba al apelante de la obtención de una licencia de armas y que fue la base utilizada para la denegatoria de la misma.[2]

En su petición, el apelante adujo que, producto de su solicitud de una licencia de armas, el Negociado le remitió una carta con fecha del 23 de febrero de 2023 en la que se expresó que no cumplía con los requisitos establecidos en la *Ley de armas de Puerto Rico de*

---

[2] Íd., Anejo 6, págs. 56-64.

*2020*, Ley Núm. 168 de 11 de diciembre de 2019, según enmendada, 25 LPRA secs. 461 *et seq,* (Ley Núm. 168-2019).[3] Según la misiva, se denegó la solicitud del señor Esau Halow por incumplimiento con los incisos (a)(2) y (a)(9) del Art. 2.02 de la Ley Núm. 168-2019, *supra* sec. 462a, puesto que la investigación conducida por el Negociado arrojó que el apelante: (1) tenía un expediente positivo de antecedentes penales; (2) estaba impedido de recibir, transportar o enviar armas de fuego o municiones por el *Federal Gun Control Act of 1968*; y (3) fue convicto tanto por delito menos grave que conllevó violencia, como por delitos graves. Asimismo, le comunicó su derecho a solicitar reconsideración.

En respuesta, el 18 de mayo de 2023, el señor Esau Halow envió una carta al Negociado a través de su representación legal en la que planteó que la misiva emitida por la agencia no incluyó información o evidencia que demostrara los alegados incumplimientos del apelante con los requisitos de la Ley Núm. 168-2019, *supra*.[4] Por ello, arguyó que estaba impedido de presentar una reconsideración de algo sobre lo cual no se le informó conforme a derecho y, por lo tanto, no le era de aplicación el término de quince (15) días para la presentación de una reconsideración hasta que no se le proveyera la información requerida.

Por todo ello, el apelante solicitó al TPI que: (1) ordenara al Negociado a realizar sus labores ministeriales y producir la información solicitada, específicamente todo documento, data, reporte, análisis, comunicado o informe utilizado para determinar que el señor Esau Halow no cumplía con los requisitos de la referida ley; (2) ordenara al Negociado a cesar y desistir de la práctica de denegar licencias de armas en violación al debido proceso de ley, el ordenamiento jurídico y el derecho vigente; (3) emitiera una

---

[3] Íd., Anejo 4, pág. 53.
[4] Íd., Anejo 5, págs. 54-55.

sentencia declaratoria declarando ilegal dicha práctica; y (4) que, luego de producida la evidencia, le concediera al apelante un término de quince (15) días para someter la reconsideración a la denegatoria de la expedición de la licencia de armas.

El 12 de septiembre de 2023, el Negociado radicó una *Moción de desestimación* en la que solicitó la desestimación del recurso al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, alegando que el apelante no expuso una reclamación que justificara la concesión de un remedio.[5] En el escrito, la parte apelada planteó que: (1) la controversia no era justiciable, puesto que el señor Esau Halow no tenía legitimación activa para presentar el recurso, dado que conocía o debía conocer que no cualificaba para la expedición de una licencia de armas de Puerto Rico luego de sus convicciones previas en los Estados Unidos; (2) el TPI carecía de jurisdicción sobre la materia porque el apelante no agotó los remedios administrativos disponibles y, además, estaba impedido de considerar recursos extraordinarios presentados para revivir términos prescritos; (3) no existía incertidumbre jurídica respecto a los derechos del demandante que justificara declarar ilegalmente una alegada práctica de no notificar adecuadamente a un solicitante de una licencia de armas; (4) el apelante no expuso cuál era el deber ministerial que justificara ordenar al Negociado a producir los récords del National Crime Information Center (NCIC), los cuales no son públicos y, aún más, son accesibles al señor Esau Halow mediante el ejercicio de su derecho a solicitar copia de su récord criminal federal; y (5) la doctrina de incuria aplicaba al presente caso porque, tras la denegatoria de la licencia, el apelante esperó tres (3) meses para enviar su misiva al Negociado y luego esperó otros tres (3) meses adicionales para instar la *Demanda de mandamus*.

---

[5] Íd., Anejo 7, págs. 65-92.

El 22 de septiembre de 2023, el señor Esau Halow presentó una *Réplica a moción de desestimación* en la que reiteró que: (1) el deber ministerial del Negociado de emitir una notificación adecuada, conforme al debido proceso de ley, emana de la Ley Núm. 168-2019, *supra*, la *Ley de Procedimiento Administrativo Uniforme*, Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA secs. 9601 *et seq.* (LPAU), la Sección 7 de la Constitución del Estado Libre Asociado de Puerto Rico, Art. II, Sec. 7. **Const. ELA,** LPRA, Tomo I. y las Enmiendas V y XIV de la Constitución de los Estados Unidos de América, Emdas. V y XIV, **Const. EE. UU.,** LPRA, Tomo I; (2) la notificación de la misiva emitida por el Negociado fue defectuosa porque omitió información específica del alegado incumplimiento con los requisitos de la Ley Núm. 168-2019, *supra,* y no advirtió cómo obtener u accesar esa información para solicitar el recurso de revisión; (3) la denegatoria de la licencia de armas no cumplió con las garantías mínimas necesarias y requeridas por el debido proceso de ley, por lo que los términos no comenzaron a transcurrir y la decisión de la agencia no podía considerarse una determinación final; (4) de la denegatoria de la licencia de armas no surgía un remedio legal adecuado para impugnar la información obtenida por el Negociado en la base de datos de justicia criminal del Negociado de Investigaciones Federales (FBI, por sus siglas en inglés); (5) solicitó una sentencia declaratoria por la frecuencia en la que el Negociado notifica defectuosamente las denegatorias de las solicitudes de licencias de armas; (6) las alegadas demoras para solicitar una reconsideración fueron causadas por el Negociado, por lo que la doctrina de incuria no aplicaba automáticamente por el mero transcurso del tiempo; y (7) el proceso administrativo del

Negociado para impugnar las determinaciones sobre expedición de licencias es inconstitucional.[6]

El 13 de octubre de 2023, el TPI emitió la *Sentencia* apelada en la que desestimó la *Demanda de mandamus* promovida por el señor Esau Halow.[7] A juicio del foro primario, el apelante solicitó, en esencia, tres remedios: (1) un *mandamus* para que el Negociado cumpliera con un alegado deber ministerial de entregar toda la evidencia utilizada para determinar el incumplimiento del apelante con los requisitos para la expedición de una licencia de armas; (2) una sentencia declaratoria que declarara ilegal la práctica del Negociado de denegar las licencias sin proveer garantías de una notificación adecuada que incluyera toda la evidencia utilizada para denegar licencias de armas; y (3) que la sentencia declaratoria también declarara inconstitucional el proceso administrativo establecido para impugnar las determinaciones sobre expedición de licencias.

Evaluado el caso, el TPI concluyó que el apelante no logró satisfacer los elementos necesarios del *mandamus* ni los de la sentencia declaratoria. En síntesis, determinó que el supuesto deber reclamado por el apelante de que se le provea la evidencia considerada en el trámite administrativo no constituía una obligación ministerial, exigible al Negociado mediante el recurso discrecional y privilegiado del *mandamus*. Aún más, razonó que el apelante no agotó los remedios administrativos, dado que tenía disponible la reconsideración ante el Negociado. También, estableció que la notificación del Negociado fue adecuada y cumplió con la obligación de certificar el cumplimiento o incumplimiento del solicitante con los requisitos de la Ley Núm. 168-2019, *supra*. Por

---

[6] Íd., Anejo 8, págs. 93-106.
[7] Íd., Anejo 1, págs. 1-31.

último, señaló que nada impedía que el apelante solicitara nuevamente la licencia de armas en un futuro.

El 27 de octubre de 2023, el señor Esau Halow radicó una *Moción de reconsideración* en la que repitió sus argumentos y solicitó al foro primario que reconsiderara su dictamen.[8]

El 30 de octubre de 2023, el TPI emitió una *Resolución* en la que declaró "No Ha Lugar" la reconsideración solicitada por el apelante.[9]

Inconforme, el señor Esau Halow acudió ante nos mediante el presente recurso y le imputó al TPI la comisión de los siguientes errores:

**PRIMERO:** ERRÓ EL TPI AL DETERMINAR QUE EL PROCEDIMIENTO ADMINISTRATIVO DE RECONSIDERACIÓN Y DE REVISIÓN JUDICIAL SUBSIGUIENTE ESTABLECIDO EN LA PROPIA LEY DE ARMAS, SEGÚN ENMENDADA, LEY 168-2019, CONSTITUYE EL REMEDIO ADECUADO EN LEY EN EL QUE EL PETICIONARIO PUEDE PRESENTAR TODOS SUS PLANTEAMIENTOS CONSTITUCIONALES, ESTATUTARIOS Y PROCESALES SOBRE LA CONTROVERSIA RELACIONADA CON LA DENEGATORIA DE SU LICENCIA DE ARMAS.

**SEGUNDO:** ERRÓ EL TPI AL DETERMINAR QUE EL NPPR NO TIENE EL DEBER MINISTERIAL DE PROVEER LA INFORMACIÓN AL SOLICITANTE DE LO QUE LO DESCUALIFICA PARA OBTENER UNA LICENCIA DE ARMAS.

En apoyo de su petición, argumentó que el término de quince (15) días, establecido por el Art. 2.02(d)(4) de la Ley Núm. 168-2019, *supra* sec. 462a, para solicitar la reconsideración, no podía ser de aplicación al apelante hasta tanto no se le proveyera la información utilizada para denegar la licencia de armas. A su entender, la expedición de las licencias de armas es un acto ministerial. Además, arguyó que el debido proceso de ley, el *Reglamento para Administrar la Ley de Armas de Puerto Rico 2020*, Reglamento Núm. 9172 y la LPAU requieren la divulgación de la evidencia presentada en su contra. Cónsono con ello, planteó que, si la razón de la denegatoria

---

[8] Íd., Anejo 2, págs. 32-51.
[9] Íd., Anejo 3, pág. 52.

se debió a un récord de convicciones que es público y la información le pertenece al ciudadano, entonces correspondía su divulgación al apelante.

El 19 de enero de 2024, el Negociado radicó un *Alegato en oposición* en el que argumentó que la *Sentencia* apelada debía ser confirmada por ser correcta en derecho. Es la posición de la parte apelada que el señor Esau Halow no demostró que tenía derecho a remedio alguno ni que se desprendiera de la Ley Núm. 168-2019, *supra,* un deber ministerial que obligara al Negociado a expedir la licencia o proveerle información sobre las bases de la determinación. A su entender, el Negociado cumplió a cabalidad con las exigencias de dicho estatuto, las cuales establecen un proceso informal de investigación en los archivos digitales a los que tiene acceso la agencia. Según argumentó, producto de la investigación, el Negociado está obligado a certificar si la persona cumple con los requisitos establecidos para la expedición de la licencia de armas, estando esa determinación sujeta a revisión por el TPI y excluida de la revisión judicial establecida por la LPAU, *supra.* Planteó que, en este caso, el señor Esau Halow tenía convicciones e impedimentos legales en otra jurisdicción que justificaban la denegatoria de la licencia. Como la revisión de esa determinación debe presentarse ante el TPI, esbozó que el apelante erró al radicar una petición de *mandamus* y al no hacer lo propio, no podía alegar un daño que no pudiera ser adecuadamente satisfecho mediante los remedios legales que aún tiene disponibles. También, arguyó que el TPI actuó correctamente al no dar paso al remedio declaratorio solicitado por el apelante, puesto que no existía una incertidumbre jurídica que aclarar en cuanto a las disposiciones y la aplicación de la Ley Núm. 168-2019, *supra.* Por último, argumentó que el apelante pretendió jugar con el sistema de justicia criminal, apostando a que sus

convicciones previas en los Estados Unidos de América no fueran descubiertas por el Negociado.

**III.**

**A.**

El auto de *mandamus* es un recurso altamente privilegiado y discrecional que se expide para ordenar a cualquier persona natural, corporación o a un tribunal de inferior jerarquía que cumpla o ejecute un acto que forma parte de sus deberes y atribuciones. *AMPR v. Srio. Educación, E.L.A.,* 178 DPR 253, 263 (2010); Art. 649 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421. El *mandamus* sólo puede utilizarse para exigir el cumplimiento de un deber calificado como "ministerial" y que no admite discreción en su ejercicio porque es mandatorio e imperativo. Íd., págs. 263-264; *Álvarez de Choudens v. Tribunal Superior*, 103 DPR 235, 242 (1974); *Espina v. Calderón, Juez, Sucn. Espina, Int.*, 75 DPR 76, 84 (1953). En ese sentido, el requisito fundamental para expedir el recurso de *mandamus* reside en la constancia de un deber claramente definido que debe ser ejecutado. Íd.; *Partido Popular v. Junta de Elecciones*, 62 DPR 745, 749 (1944). Es decir, "la ley no sólo debe autorizar, sino exigir la acción requerida". Íd., citando a R. Hernández Colón, *Derecho Procesal Civil*, 6ta. ed., San Juan, Ed. LexisNexis de Puerto Rico, 2017, sec. 5803, pág. 605.

El deber ministerial que exige el auto de *mandamus* debe emanar de un empleo, cargo o función pública, por lo que el recurso procede contra todos los funcionarios del ejecutivo, desde el más alto hasta el último en la escala jerárquica. Art. 650 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3422; *Noriega v. Hernández Colón*, 135 DPR 406, 449 (1994); *Lutz v. Post Gobernador de Puerto Rico,* 14 DPR 860, 869-870 (1908). Además, este recurso puede aplicarse a cualquier agencia, junta o tribunal inferior de

nuestro sistema judicial, siempre que éstos estén obligados a ejecutar un acto por mandato de ley. Íd. Por ello, aquella persona que se vea afectada por el incumplimiento del deber podrá solicitar la expedición del auto de *mandamus*. **Asoc. Pesc. Pta. Figueras v. Pto del Rey, Inc.**, 155 DPR 906, 921 (2001).

Como requisito procesal indispensable para presentar un recurso de *mandamus*, se ha reconocido que solo puede ser interpuesto luego de que se han agotado otros remedios existentes en ley. Art. 651 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3423; **Álvarez de Choudens v. Tribunal**, supra, pág. 242. En consecuencia, la expedición del *mandamus* no procederá "en los casos en que se encuentre un recurso adecuado y eficaz en el curso ordinario de la ley. […]". Art. 651 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3423. Esto se debe a que "el objeto del auto no es reemplazar remedios legales sino suplir la falta de ellos". **AMPR v. Srio. Educación, E.L.A.**, supra, págs. 266-267. Por consiguiente, antes de comparecer al Tribunal, la parte peticionaria debe demostrar que hizo un requerimiento previo al funcionario encargado, para que se cumpliera el deber ministerial reclamado. **Dávila v. Superintendente de Elecciones**, 82 DPR 264, 275 (1960). Además, debe regirse por la reglamentación procesal civil, por las leyes especiales pertinentes y por las reglas aplicables del Reglamento del Tribunal de Apelaciones.

**B.**

La sentencia declaratoria es un remedio que permite al tribunal declarar derechos, estados y otras relaciones jurídicas, aunque existan otros remedios disponibles. Regla 59 de Procedimiento Civil, 32 LPRA Ap. V, R. 59; **Mun. Fajardo v. Srio. Justicia et al.,** 187 DPR 245, 254 (2012). La solicitud de sentencia declaratoria tiene como resultado una decisión judicial sobre cualquier divergencia en la interpretación de la ley. Regla 59.2 de

Procedimiento Civil, *supra,* R. 59.2. Sin embargo, solo se emite cuando existe una controversia sustancial entre partes con intereses legales adversos, con el propósito de disipar la incertidumbre jurídica. ***Mun. Fajardo v. Srio. Justicia et al.,*** supra, pág. 254. Además, una vez dictada, tiene la misma eficacia y vigor que cualquier otro fallo judicial. Regla 59 de Procedimiento Civil, *supra,* R.59.

La Regla 59.2 de Procedimiento Civil, *supra,* R.59.2, establece que cualquier persona con interés en una escritura, testamento, contrato escrito u otro documento constitutivo de contrato, o cuyos derechos fuesen afectados por un estatuto, estado u otras relaciones jurídicas, ordenanza municipal, contrato o franquicia, puede solicitar una decisión sobre cualquier divergencia en la interpretación o validez de dichos documentos. Asimismo, puede solicitar que se dicte una declaración sobre los derechos, estados u otras relaciones jurídicas derivadas de estos documentos. Íd.

Cabe resaltar que, el foro primario puede conceder remedios adicionales fundados en una sentencia declaratoria, siempre que fueren necesarios o adecuados. Regla 59.4 de Procedimiento Civil, *supra,* R.59.4. De esta forma, la sentencia declaratoria representa un mecanismo procesal de carácter remedial que permite dilucidar ante los tribunales los méritos de cualquier reclamación que implique un peligro potencial en contra de una parte. ***Suárez v. C.E.E. I***, 163 DPR 347, 354 (2004); ***Charana v. Pueblo***, 109 D.P.R. 641, 653 (1980). Por ser así, la sentencia declaratoria permite a una parte obtener la protección judicial antes de que el peligro se convierta en uno real. ***Charana v. Pueblo***, supra. Ahora bien, si la disputa no está anclada en hechos específicos, "adquiere un matiz teórico que generalmente la excluye del ámbito legítimo de la sentencia declaratoria". ***Coca-Cola v. Unión de Tronquistas***, 109 DPR 834, 838 (1980).

De otro lado, la sentencia declaratoria propicia la seguridad y certidumbre en las relaciones jurídicas tanto en el ámbito público, como en el privado. ***Romero Barceló v. E.L.A.****,* 169 DPR 460, 507 (2006); ***Sánchez et al. v. Srio de Justicia et al.****,* 157 DPR 360, 410 (2002); ***Moscoso v. Rivera****,* 76 DPR 481, 488 (1954). No obstante, está sujeta a una balanceada discreción del tribunal y debe realizarse "dentro de ciertas fronteras, contornos y postulados jurídicos". ***Charana v. Pueblo****,* supra, pág. 653; ***Moscoso v. Rivera****,* supra, pág. 493. Por lo tanto, antes de dictar una sentencia declaratoria, el foro primario debe sopesar los intereses públicos y privados de las partes, la necesidad de emitir el recurso y el impacto que tiene sobre lo reclamado, por lo que "debe demostrarse que los intereses de la justicia serían bien servidos y que la sentencia que se dicte sea efectiva y adecuada". ***Moscoso v. Rivera,*** supra, pág. 494.

## C.

La Ley Núm. 168-2019, *supra,* fue aprobada con el propósito de "salvaguardar y proteger los derechos de los ciudadanos americanos residentes en Puerto Rico, mediante una nueva Ley de Armas que sea consistente con la Segunda Enmienda de la Constitución de Estados Unidos [y] con las decisiones del Tribunal Supremo Federal [...]". Véase la Exposición de Motivos de la Ley Núm. 168-2019. Con ello, la legislatura procuró establecer claramente que en Puerto Rico el portar y poseer armas de fuego es un derecho fundamental e individual, como en el resto de los Estados Unidos de Norteamérica. Íd.

De conformidad con esta ley, la Oficina de Licencias de Armas del Negociado de la Policía de Puerto Rico (Oficina de Licencias de Armas) es la entidad encargada de expedir las licencias de armas, sin las cuales no se puede poseer o portar un arma de fuego en Puerto Rico. Artículo 1.02 de Ley Núm. 168 de 2019, *supra* sec.

461a. Previo a la emisión de una licencia, esta oficina debe cersiorarse de que la persona interesada en poseer o portar un arma de fuego cumple con una serie de requisitos. Fundamentalmente, esta licencia permite al ciudadano o ciudadana la posesión, tenencia y transportación de armas, con sujeción a ciertos requisitos relacionados con el número, modo de almacenaje, transportación, función gubernamental que desempeña, si alguna, y otros. ***Pueblo v. Rodríguez López***, 210 DPR 752, 763 (2022).

Los Artículos 2.01 a 2.16 de la Ley Núm. 168-2019, *supra* secs. 462a-462o, rigen la expedición de licencias de armas en Puerto Rico. Específicamente, el Artículo 2.02, *supra*, detalla los criterios que debe cumplir una persona interesada en obtener una licencia de armas. El inciso A del referido artículo establece expresamente los requisitos siguientes:

(1) Haber cumplido veintiún (21) años de edad.

(2) **Tener un expediente negativo de antecedentes penales y no encontrarse acusado y pendiente o en proceso de juicio por algunos de los delitos enumerados en el Artículo 2.09 de esta Ley o sus equivalentes, tanto en Puerto Rico, como en cualquier jurisdicción de Estados Unidos, a nivel federal o en cualquier país extranjero.**

(3) No ser adicto a sustancias controladas o ebrio habitua.

(4) No estar declarado incapaz mental por un Tribunal con jurisdicción.

(5) No haber sido separado de las Fuerzas Armadas de Estados Unidos o del Negociado de la Policía de Puerto Rico bajo condiciones deshonrosas.

(6) No incurrir ni pertenecer a organizaciones que incurran en actos de violencia o dirigidos al derrocamiento del gobierno constituido.

(7) No estar bajo una orden del tribunal, o haber estado en cualquier momento durante los pasados doce meses previos a la fecha de solicitud, que le prohíba acosar, espiar, amenazar o acercarse a un compañero íntimo, algún familiar de este o a persona alguna.

(8) Ser ciudadano o residente legal de Estados Unidos de América.

(9) **No ser persona impedida por el "Federal Gun Control Act of 1968" a recibir, transportar o enviar armas de fuego o municiones.**

(Énfasis nuestro). Íd.[10]

Además, los incisos (b) y (c) del Artículo 2.02 de la Ley Núm. 168-2019, *supra*, especifican la información y los documentos que deben incluirse en la solicitud para la expedición de una licencia de armas. Entre estos documentos se encuentran el certificado de nacimiento o pasaporte vigente, copia de la licencia de conducir, dos (2) fotografías de busto, un certificado negativo de antecedentes penales expedido no más de treinta (30) días previos a la fecha de la solicitud, entre otros. Íd.

Asimismo, el Artículo 2.09 de la Ley Núm. 168-2019, *supra*, sec. 462h, establece que la Oficina de Licencias de Armas no expedirá licencia de armas a ninguna persona que haya sido convicta en Puerto Rico y en cualquier otra jurisdicción estadounidense de cualquier delito grave o su tentativa, por delito menos grave que conlleve violencia, por conducta constitutiva de violencia doméstica, según tipificada en la *Ley para la prevención e intervención con la violencia doméstica*, Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA secs. 601 *et seq.*, por conducta constitutiva de acecho, según tipificada en la *Ley contra el acecho en Puerto Rico*, Ley Núm. 284 de 21 de agosto de 1999, según enmendada, 33 LPRA secs. 4013 *et seq.*, o por conducta constitutiva de maltrato de menores, según tipificada en la *Ley para la seguridad, bienestar y protección de menores*, Ley Núm. 246 de 16 de diciembre de 2011, 8 LPRA secs. 1101 *et seq.*

Respecto al proceso de adjudicación, una vez sometida la solicitud de licencia de armas, la agencia administrativa debe completar una investigación y tomar una decisión sobre la expedición o denegatoria de la licencia en un término no mayor de treinta (30) días naturales, contados a partir de la fecha que se

---

[10] Véase, además, el Artículo 2.01 del Reglamento para Administrar la Ley de Armas de Puerto Rico 2020, Reglamento Núm. 9172 del Negociado de la Policía de Puerto Rico.

presentó la solicitud. Íd., inciso d (2). Para ello, accederá a los archivos digitales de cualquier agencia gubernamental de Puerto Rico, de Estados Unidos o cualquier subdivisión política de este, de cualquier entidad extranjera o internacional a la que pueda tener acceso, incluyendo los archivos del NCIC, del *National Instant Criminal Background Check System*, el Sistema de Información de Justicia Criminal y el Registro Criminal Integrado. Luego, <u>certificará por escrito</u> si la persona cumple o no, con los requisitos establecidos para la obtención de la licencia. Íd., inciso d (3).

De resultar la investigación realizada por la Oficina de Licencias de Armas de los archivos digitales en una determinación de que la persona no cumple con todos los requisitos establecidos en la Ley Núm. 168-2019, *supra,* no le será concedida la licencia de armas. Sin embargo, esto no impide que la persona pueda solicitarla nuevamente en un futuro. Íd., inciso d (4).

En cuanto al proceso de reconsideración, la persona interesada en obtener una licencia de armas podrá solicitar a la Oficina de Licencias de Armas una reconsideración dentro de los próximos quince (15) días naturales siguientes a la denegatoria de la otorgación de la licencia, y la agencia tendrá quince (15) días naturales para emitir una determinación y atender la misma. Ahora bien, de sostenerse la denegatoria, o de no emitir ninguna determinación respecto a la reconsideración, <u>la persona podrá acudir al Tribunal de Primera Instancia para la revisión de la decisión administrativa</u>. Íd., inciso d (4).

**D.**

En diversas ocasiones, el Tribunal Supremo de Puerto Rico ha expresado que la jurisdicción es el poder o la autoridad que tienen los tribunales para considerar y decidir casos o controversias. ***Beltrán Cintrón y otros v. Estado Libre Asociado,*** 204 DPR 89, 101 (2020), ***Torres Alvarado v. Madera Atiles***, 202 DPR 495, 499-

500 (2019); ***Cordero et al. v. ARPe et al.,*** 187 DPR 445, 456 (2012). De igual forma, el Máximo Foro ha reiterado que los tribunales tenemos siempre la obligación de ser celosos guardianes de nuestra propia jurisdicción, pues sin jurisdicción no estamos autorizados a entrar a resolver los méritos de un recurso. ***Shell v. Srio. Hacienda,*** 187 DPR 109, 122-123 (2012); ***Cordero et al. v. ARPe et al.,*** 187 DPR 445, 457 (2012); ***Muni. de San Sebastián v. QMC Telecom,*** 190 DPR 652, 660 (2014). Por tal razón, el primer factor a considerar ante toda controversia es el aspecto jurisdiccional. ***Torres Alvarado v. Madera Atiles***, supra, pág. 500.

Cabe resaltar que, los tribunales en Puerto Rico poseen jurisdicción general, por lo que ostentan autoridad para atender cualquier causa de acción que presente una controversia, salvo que no tengan jurisdicción sobre la materia. ***Beltrán Cintrón y otros v. Estado Libre Asociado***, supra, pág. 101. Precisamente, "...el Estado a través de sus leyes, puede otorgar o privar de jurisdicción sobre la materia a un tribunal." ***Rodríguez Rivera v. De León Otaño***, 191 DPR 700, 708 (2014). En esencia, "la jurisdicción sobre la materia se refiere a la capacidad del tribunal para atender y resolver una controversia sobre un aspecto legal". J. A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1era ed. rev., 2012, pág. 27. Por ello, cuando un tribunal determina que no tiene jurisdicción sobre la materia, solo puede así declararlo y desestimar el caso sin entrar en los méritos de la controversia. ***Beltrán Cintrón y otros v. Estado Libre Asociado***, supra. Ello, debido a que la falta de jurisdicción no puede ser subsanada, ni el Tribunal puede atribuírsela. ***Pérez Soto v. Cantera Pérez, Inc. et al.,*** 188 DPR 98, 105 (2013).

A esos efectos, la doctrina de la jurisdicción primaria, la cual forma parte de las normas de autolimitación judicial, atiende la interrogante de qué foro posee la facultad inicial de adjudicar y

entender un asunto. Íd., pág. 102. Dicha doctrina consiste en dos vertientes, a saber: la jurisdicción primaria concurrente y la jurisdicción primaria exclusiva. Íd. Así pues, "la jurisdicción primaria concurrente presupone que tanto el foro judicial como el administrativo tienen jurisdicción para entender en la controversia planteada, pero se cede la primacía a la agencia por su especialización y conocimiento sobre el asunto objeto de la reclamación. Íd., pág. 103. Por lo tanto, "los jueces deben aplicar esta norma de abstención, como regla general, en casos en los cuales el peritaje de la agencia sea indispensable para resolver la controversia...". Íd. Por el contrario, la doctrina de jurisdicción primaria exclusiva, también conocida como jurisdicción estatutaria, aplica cuando la propia ley establece que la agencia administrativa será el foro con jurisdicción para examinar la reclamación. Íd.

### E.

Por otro lado, la doctrina de agotamiento de remedios administrativos determina "la etapa en que un tribunal de justicia debe intervenir en una controversia que se ha presentado inicialmente ante un foro administrativo." *S.L.G. Flores-Jiménez v. Colberg,* 173 DPR 843, 851 (2008). Véase, además, *Asoc. Pesc. Pta. Figueras v. Pto. Del Rey,* 155 DPR 906, 916-917 (2001); *Mun. de Caguas v. AT&T,* 154 DPR 401, 407 (2001). De ordinario, esta norma aplica a los casos en los que una parte que instó o tiene instada una acción ante una agencia gubernamental o algún ente administrativo recurre al tribunal sin antes haber culminado todo el trámite que tenía disponible en ese foro. *Municipio de Caguas v. AT& T,* supra, pág. 408. Cónsono con lo anterior, la doctrina de remedios administrativos pretende evitar que se presente un recurso ante los tribunales sin que la agencia administrativa haya tomado una determinación final en el asunto. *Hernández, Romero v. Pol. de P.R.,* 177 DPR 121, 136 (2009).

En circunstancias como la antes descrita, los tribunales se abstienen de revisar una actuación de una agencia hasta tanto la persona afectada agota todos los remedios administrativos que tiene disponible, de tal forma que la decisión administrativa refleje la posición final de la entidad estatal. ***Ofic. Proc. Paciente v. Aseg. MCS***, 163 DPR 21, 35 (2004); ***Acevedo v. Mun. Aguadilla***, 153 DPR 788, 802 (2001). Por ello, usualmente se invoca el agotamiento cuando una parte ante el foro administrativo solicita la intervención judicial previo a consumar el procedimiento administrativo." ***S.L.G. Flores-Jiménez v. Colberg***, supra, pág. 851.

La doctrina de agotamiento de remedios fomenta que los organismos administrativos utilicen y apliquen su conocimiento especializado al dirimir las controversias. ***S.L.G. Flores-Jiménez v. Colberg***, supra, pág. 852. Sin embargo, la exigencia de agotar todos los remedios no es un principio de aplicación inflexible. Íd.; ***Asoc. Pesc. Pta. Figueras v. Pto. del Rey***, supra, pág. 917; ***Igartúa de la Rosa v. Adm. Derecho al Trabajo***, 147 DPR 318 (1998). En virtud de ello, la Sección 4.3 de la LPAU, *supra* sec. 9673, dispone que se podrá eximir a una parte de agotar remedios ante la agencia cuando: i) el remedio sea inadecuado; ii) el requerir su agotamiento resulta en un daño irreparable al promovente; iii) en un balance de intereses, no se justifica agotar los remedios; iv) cuando se alegue una violación sustancial de los derechos constitucionales; v) sea inútil agotar los remedios por la dilación excesiva en el procedimiento; vi) cuando la agencia administrativa carezca de jurisdicción; o vii) el asunto es estrictamente de derecho y resulta innecesaria la pericia administrativa. ***S.L.G. Flores-Jiménez v. Colberg***, supra, pág. 852.

**IV.**

En este caso, el TPI dictó una *Sentencia* en la que desestimó la *Demanda de mandamus* promovida por el señor Esau Halow. En

su dictamen, el foro primario concluyó que el apelante no logró satisfacer los elementos necesarios del recurso de *mandamus* ni de la sentencia declaratoria. A su entender, el Negociado no tiene una obligación ministerial de proporcionar la información utilizada para descalificar al apelante en la solicitud de la licencia de armas. Asimismo, señaló que el apelante no agotó los remedios administrativos disponibles, así como la posibilidad de una reconsideración ante el Negociado. Particularizó que el procedimiento administrativo de reconsideración y de revisión judicial establecido en la Ley Núm. 168-2019, *supra*, constituye el remedio adecuado en ley en el que el peticionario puede presentar sus planteamientos constitucionales, estatutarios y procesales sobre la controversia relacionada con la denegatoria de la licencia de armas. También, confirmó que la notificación del Negociado fue adecuada y cumplió con certificar si el solicitante cumplía o no con los requisitos de la Ley Núm. 168-2019, *supra*. Por último, indicó que no existía ningún obstáculo para que el apelante solicitara nuevamente la licencia de armas en el futuro.

Inconforme, el señor Esau Halow planteó que el foro primario erró al determinar que el procedimiento administrativo de reconsideración y de revisión judicial, establecidos en la Ley Núm. 168-2019, *supra*, constituyen el remedio adecuado en ley para presentar todos sus argumentos constitucionales, estatutarios y procesales en relación con la denegatoria de su licencia de armas. A su vez, enfatizó que el foro primario erró al deteminar que el Negociado no tiene un deber ministerial de proveer la información que descualifica al apelante para obtener la licencia de armas.

En cambio, el Negociado argumentó que el *mandamus* era improcedente porque el apelante no demostró que tenía derecho a remedio alguno, ni probó que el Negociado tuviera un deber ministerial de expedir la licencia solicitada o proveerle la

información utilizada para denegarla. Todo lo contario. Esbozó que el Negociado cumplió a cabalidad con las exigencias de la Ley Núm. 168-2019, las cuales le obligan a investigar las bases de datos a las que tiene acceso y únicamente certificar si el solicitante cumple con los requisitos. Según adujo, la investigación llevada a cabo arrojó que el señor Esau Halow tenía convicciones previas en otra jurisdicción y, por ello, el Negociado denegó la licencia solicitada, lo cual era revisable exclusivamente por el TPI.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso, en correcta práctica adjudicativa apelativa, resulta forzoso concluir que el TPI no incidió en los errores señalados. La determinación apelada es correcta en derecho.

En primer lugar, el foro primario no erró al determinar que el Negociado no tiene un deber ministerial de proveer la información al solicitante de lo que lo descualifica para obtener una licencia de armas. La Ley 168-2019, *supra*, dispone que, presentada una solicitud de licencia de armas, la Oficina de Licencias de Armas, luego de una investigación, deberá emitir o denegar la licencia **"certifica[ndo] por escrito si el peticionario cumple o no con los requisitos establecidos en esta ley para la expedición de la licencia de armas"**. (Énfasis nuestro). 25 LPRA sec. 462a. Por consiguiente, resulta palmario que el Negociado no estaba obligado a proveer la información que descualificó al solicitante de obtener una licencia de armas. Por la naturaleza de este proceso informal, regulado específicamente por una ley especial, <u>únicamente</u> se requiere que la agencia notifique al solicitante si cumple o no con los requisitos de esta. Precisamente, la agencia cumplió con este requisito al <u>certificar</u>, a través de la misiva emitida el 23 de febrero de 2023, que el señor Esau Halow no cumplió con los requisitos de la Ley 168-2019, *supra*. Aún más, la Oficina de Licencias de Armas detalló las razones que descualificaban al apelante. Entre estas,

afirmó que: (1) poseía un expediente positivo de antecedentes penales; (2) se encontraba impedido de recibir, transportar o enviar armas de fuego o municiones por el *Federal Gun Control Act of 1968*; y (3) fue convicto por delito menos grave que conllevó violencia y delitos graves.

En segundo lugar, el foro primario no erró al determinar que el procedimiento administrativo de reconsideración judicial establecido en la Ley Núm. 168-2019, *supra*, constituye el remedio adecuado en ley para que el apelante presente todos sus planteamientos constitucionales, estatales y procesales relacionados con la denegatoria de la licencia de armas. En efecto, la Ley 168-2019, *supra*, establece claramente que la persona que solicita una licencia de armas "podrá solicitar una reconsideración" dentro de quince (15) días; que la Oficina de Licencias de Armas tendrá quince (15) días para atenderla misma; y que, de sostenerse la denegatoria o no atenderse la reconsideración, el solicitante "**podrá acudir al Tribunal de Primera Instancia para la revisión de la decisión administrativa**". (Énfasis nuestro). Íd. Existen remedios adecuados en ley para atender sus planteamientos.

El proceso legal descrito no solo establece un marco claro para la reconsideración, sino que también garantiza al apelante el derecho a llevar su caso ante el Tribunal de Primera Instancia en caso de que la denegatoria persista o no se atienda la solicitud de reconsideración. Por consiguiente, este proceso brinda al señor Esau Halow oportunidades adecuadas para presentar sus planteamientos y buscar la revisión de la decisión administrativa en instancias superiores, asegurando así un proceso legal completo. No obstante, el apelante no agotó los remedios administrativos disponibles ni actuó dentro de los términos establecios por la ley, debido a que esperó tres (3) meses para enviar su comunicación a la

la parte apelada y luego aguardó <u>tres (3) meses adicionales</u> para radicar la *Demanda de mandamus*.

Por todo lo anterior, resulta imperativo concluir que el TPI no cometió los errores señalados por el apelante, que el dictamen es correcto en derecho y, por lo tanto, corresponde la confirmación de la *Sentencia* apelada.

**V.**

Por los fundamentos expuestos, se *confirma* la *Sentencia* apelada.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones